IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARIAN BALCOM, | ) C.A. No. 19-506 |
| Plaintiff, | ) |
| v. | ) Jury Trial Demanded |
| CITY OF PITTSBURGH, GABE FIGUEROA, INDIVIDUALLY and JOHN DOE, INDIVIDUALLY | ) |
| Defendants. | ) |

**COMPLAINT IN CIVIL ACTION**

I)   INTRODUCTION

1. This lawsuit contends that Darian Balcom's constitutional rights to freedom of speech and equal protection of the laws were violated when a City of Pittsburgh police officer arrested her and charged her with serious criminal offenses because she expressed opposition to the election of Donald Trump, objected to being called "sweetheart," and (in the officer's words) was a "bleeding heart liberal," who "sassed the police." This conduct violated Ms. Balcom's First Amendment right to criticize the police and express political views and affiliations as well as her Fourteenth Amendment right to be free from discrimination based on her gender. This lawsuit further contends that the officer's blatant violation of Ms. Balcom's constitutional rights arose within the context of and stemmed from the City of Pittsburgh's long-standing custom and practice of condoning and acquiescing in police misconduct, including innumerable instances where

the City failed to discipline and/or promoted officers who were known to have violated citizens' constitutional rights.

II)	PARTIES

2.	Plaintiff Darian Balcom is an adult resident of the City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.

3.	Defendant City of Pittsburgh is a municipality within the Commonwealth of Pennsylvania, with a principal place of business located at 414 Grant Street, Pittsburgh, Pennsylvania 15219, which at all times relevant hereto, was authorized to and did operate and maintain a police department.  Defendant City of Pittsburgh was acting by and through its duly authorized agents, employees and/or assigns, who were then and there acting within the course and scope of their employment under the color of state law and in accordance with the custom, policies and practices of the City of Pittsburgh.

4.	At all times relevant hereto, and prior to the events in this case, the Defendant City of Pittsburgh was on notice of repeated instances of City of Pittsburgh police officers engaging in unconstitutional conduct and then initiating false criminal charges and/or otherwise filing false Affidavits of Probable Cause to justify and/or cover up this conduct. Despite such knowledge, Defendant City of Pittsburgh failed to take appropriate action, including but not limited to, referral for criminal prosecution, appropriate discipline, and/or retraining.

5.	Defendant Gabe Figueroa is an adult individual residing in the City of Pittsburgh who, at all times relevant hereto, was employed as a City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of

state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. This defendant is sued in his individual capacity.

6. Defendant John Doe is an adult individual residing in the City of Pittsburgh who, at all times relevant hereto, was employed as a City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. This defendant is sued in his individual capacity.

III) <u>JURISDICTION</u>

7. This Court has jurisdiction over Plaintiff's claims against the above-referenced defendants pursuant to 28 U.S.C. §1343 and/or 28 U.S.C. §1331.

IV) <u>FACTUAL ALLEGATIONS</u>

8. Plaintiff Darian Balcom owns and manages rental properties in the City of Pittsburgh.

9. On Monday, December 18, 2017, the owner of a building neighboring one owned by Ms. Balcom asked her, in writing, to enter an apartment in his building to feed dogs which he believed had been abandoned. Her friend Mathew Grebner offered to accompany her.

10. When Ms. Balcom and Mr. Grebner arrived at the apartment that evening, they discovered two cats that appeared neglected and malnourished.

11. Ms. Balcom and Mr. Grebner took the cats to an empty unit in Ms. Balcom's apartment building next door for the purpose of providing them with food, water and a clean litterbox.

12. As Ms. Balcom and Mr. Grebner situated the cats in Ms. Balcom's vacant apartment unit, five City of Pittsburgh Police officers, including Defendant Figueroa and Defendant Doe, entered the apartment without her consent and without a warrant. Figueroa accused Ms. Balcom of illegally entering the apartment next door and stealing the cats. Figueroa did not give them the opportunity to explain that they had written authorization from the building's owner to enter the apartment.

13. The officers ordered Ms. Balcom and Mr. Grebner outside where, during an exchange between Ms. Balcom and Defendant Figueroa, Figueroa called Ms. Balcom "Sweetheart."

14. Ms. Balcom asked Figueroa not to call her "Sweetheart" and questioned whether he was performing his duties in accordance with his training.

15. Defendant Figueroa then asked Ms. Balcom whether she was a supporter of President Donald Trump. She responded that she was not a Trump supporter. Defendant Figueroa told Ms. Balcom that he was glad Trump had won the election.

16. Figueroa then placed Ms. Balcom under arrest.

17. Figueroa did not place Mr. Grebner under arrest.

18. Neither Figueroa, nor any of the other officers asked Mr. Grebner about his political beliefs or called him "sweetheart."

19. Figueroa informed Mr. Grebner that Ms. Balcom had not done anything wrong. However, he intended to arrest her because she had "sassed" the officers. He also referred to her as a "bleeding heart liberal."

20. Defendant John Doe was standing in close proximity to Figueroa and Balcom and both witnessed and overheard their interaction.

21. Doe was aware that Figueroa had arrested Ms. Balcom because of her political beliefs and because she had criticized his behavior. However, he took no action to intervene and prevent the arrest.

22. Mr. Grebner was released from the scene. He was not charged with any criminal offenses.

23. Ms. Balcom was placed in the back of a patrol car and taken to the Allegheny County Jail where she was held overnight. She was released on her own recognizance the following day.

24. Ms. Balcom was charged with felony burglary, felony criminal trespassing and misdemeanor theft by unlawful taking.

25. Ms. Balcom's preliminary hearing was postponed twice at the request of the prosecution. Ms. Balcom was obliged to pay attorneys to prepare for and attend three scheduled hearings.

26. The third time Ms. Balcom appeared for her preliminary hearing all of the charges were withdrawn.

27. Defendant Figueroa arrested Ms. Balcom because of her political affiliation including because he perceived her to be a "bleeding heart liberal" and because she expressed opposition to Donald Trump.

28. Defendant Figueroa arrested Ms. Balcom for engaging in protected speech including criticizing a law enforcement officer and criticizing an elected official.

29. Defendant Figueroa arrested Ms. Balcom because of her gender and/or her failure to conform to gender stereotypes.

30. Defendant Doe was aware of Figueroa's unconstitutional actions but failed to intervene to prevent the violation of Ms. Balcom's constitutional rights.

V)   DAMAGES

31. The actions of Defendant Figueroa, as described herein, caused Ms. Balcom to suffer severe emotional distress, embarrassment, humiliation, damage to her reputation, psychological trauma and other emotional sequelae associated with the events described herein.

32. The actions of Defendant Figueroa, as described herein, caused Ms. Balcom to incur legal fees and expenses to defend the charges brought against her in violation of her constitutional rights.

VI)   NOTICE AND ACQUIESCENCE

33. Prior to the events of December 18, 2017, Defendant City of Pittsburgh was on notice that City of Pittsburgh police officers had frequently engaged in conduct which violated citizens' constitutional rights.  The City was on notice that these officers often filed false criminal charges to justify such conduct and to protect themselves from civil liability by obtaining plea-bargains from their victims when faced with serious, often felony-level, false criminal charges.

34. Despite knowledge of such unconstitutional practices on the part of City of Pittsburgh police officers, Defendant City of Pittsburgh failed to take any action to prevent officers from engaging in such unconstitutional conduct. Officers who had engaged in such practices were not punished and, in many instances, were promoted to a higher rank.

35. For example, Defendant City of Pittsburgh was aware of the following constitutional violations by Pittsburgh police officers:

   a. In September 2017, several Pittsburgh police officers used excessive force against two citizens (including multiple head punches against one of the defenseless individuals) and then filed false criminal charges against them to justify their use of force, *see Adelman v. Jacobs*;

   b. On June 24, 2017, several Pittsburgh police officers unlawfully entered an apartment in the Mount Washington neighborhood of Pittsburgh and then used excessive force against a sleeping citizen, Robert Aldred, including releasing a K9 police dog to attack the citizen, and subsequently filed false criminal charges against him to justify their excessive use of force;

   c. In August 2016, several Pittsburgh police officers used excessive force against a citizen (including releasing a K9 police dog to attack the citizen) who was on his own property and then filed false criminal charges against the citizen to justify their excessive use of force, *see Dellenbaugh v. City of Pittsburgh*;

   d. On March 10, 2016, several Pittsburgh police officers used excessive force against multiple citizens (including shooting one of their dogs) on their own property and then filed false criminal charges against them to justify their excessive use of force, *see Jackson v. Goetz*;

   e. On November 28, 2015, Pittsburgh police officer Stephen Matakovich used excessive force against a citizen and then filed false criminal charges against him to justify his excessive use of force, *see Despres v. City of Pittsburgh*;

   f. On September 1, 2014, several Pittsburgh police officers used excessive force against an off-duty Pennsylvania State Police trooper and then filed false criminal charges against him to justify their excessive use of force. One of these officers was promoted shortly thereafter to the rank of sergeant. A jury concluded that these officers had violated the trooper's constitutional rights, *see Williams v. City of Pittsburgh*;

   g. On January 25, 2014 the City of Pittsburgh SWAT team recklessly executed a warrant on the wrong apartment and, after realizing their error, removed the residents from their home and held them in the

        back of a police vehicle while they executed the warrant on the home next door, see *Werkmeister v. City of Pittsburgh*.

h.    On September 28, 2013, Pittsburgh police officer Elizabeth Vitalbo unlawfully seized a citizen and then filed false criminal charges against her to justify the Fourth Amendment violation, *see Brown v. City of Pittsburgh*;

i.    In November 2012, Pittsburgh police officer Colby Neidig used excessive force against a citizen and then filed false criminal charges against him to justify his excessive use of force, *see McGuire v. City of Pittsburgh*; although the City claimed that Neidig had engaged in willful misconduct, Neidig was never disciplined, and was subsequently promoted to the rank of sergeant;

j.    On December 10, 2012, Officer Mathew Turko pistol-whipped Anthony Kenny while a fellow Pittsburgh police officer watched. Both officers then collaborated filing false criminal charges against the citizen. A jury concluded that both officers violated Mr. Kenny's constitutional rights. Approximately six months later the City promoted officer Turko, *see Kenney v. City of Pittsburgh*;

k.    On November 11, 2012, several Pittsburgh police officers used excessive force against a citizen (including shooting and paralyzing him) and then filed false criminal charges against him to justify their excessive use of force, *see Ford v. City of Pittsburgh*;

l.    On February 28, 2010, Pittsburgh police officer David Honick used excessive force against Taylor Condarcure and then filed false criminal charges against him to justify his excessive use force. Honick and fellow officer Anthony Scarpine then conspired to retaliate against Mr. Condarcure for filing an OMI complaint by bringing false criminal charges against his mother. *see Taylor Condarcure v. City of Pittsburgh, Christine Condarcure v. City of Pittsburgh*;

m.    On January 10, 2010, several Pittsburgh police officers used excessive force against a citizen and then filed false criminal charges against him to justify their excessive use of force, *see Miles v. City of Pittsburgh*;

n.    On March 15, 2008, Pittsburgh police officer Edward Cunningham tased a citizen without justification or provocation and then filed false criminal charges against him to justify his excessive use of force, *see Hacket v. City of Pittsburgh*;

    o.    On September 21, 2006, three undercover Pittsburgh police officers used excessive force against a citizen during a traffic stop and then filed false criminal charges against him to justify their excessive use of force, *see Collins v. City of Pittsburgh*;

    p.    From 1993 until 2010, Pittsburgh employed police officer Bradley Walker, who it knew to consistently use excessive force against citizens (one time punching an innocent citizen so hard he lost his eye), until he was finally terminated after being criminally prosecuted by the Pennsylvania State Police.

VII)    <u>CLAIMS</u>

### *Balcom v. Figueroa*

36.    Ms. Balcom incorporates Paragraphs 1 through 35 as if fully incorporated herein.

37.    Defendant Figueroa's actions, as described herein, violated Ms. Balcom's right to freedom of speech as protected by the First Amendment to the United States Constitution and made actionable by 42 U.S.C. § 1983.

38.    Defendant Figueroa's actions, as described herein, violated Ms. Balcom's right to equal protection of the laws as protected by the Fourteenth Amendment to the United States Constitution and made actionable by 42 U.S.C. § 1983.

WHEREFORE, Plaintiff requests judgment in her favor and against Defendant Gabe Figueroa for compensatory and/or punitive damages, the award of costs and attorneys' fees and such other relief as this Court deems appropriate and/or equitable under the circumstances.

### *Balcom v. Doe*

39. Ms. Balcom incorporates paragraphs 1 through 38 as if fully set forth herein.

40. Defendant John Doe's actions and/or failure to act, as described herein, violated Ms. Balcom's right to freedom of speech as protected by the First Amendment to the United States Constitution and made actionable by 42 U.S.C. § 1983.

41. Defendant John Doe's actions and/or failure to act, as described herein, violated Ms. Balcom's right to equal protection of the laws as protected by the Fourteenth Amendment to the United States Constitution and made actionable by 42 U.S.C. § 1983.

42. WHEREFORE, Plaintiff requests judgment in her favor and against Defendant John Doe for compensatory and/or punitive damages, the award of costs and attorneys' fees and such other relief as this Court deems appropriate and/or equitable under the circumstances.

### *Balcom v. City of Pittsburgh*

43. Ms. Balcom incorporates paragraphs 1 through 42 as if fully set forth herein.

44. Defendant City of Pittsburgh's conduct, as hereinbefore described, violated and was the proximate cause of the violation of Ms. Balcom's constitutional rights under the 1st and 14th amendment and also violated her rights under the 14th amendment substantive due process clause to be free from deliberately indifferent conduct by a governmental entity and/or free from custom, policies, and practices amounting to the deliberate indifference to the violation of citizen's constitutional rights by police officers employed by the City of Pittsburgh.

45.     Plaintiff's 14th Amendment substantive due process claims are made actionable against the City of Pittsburgh pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C.§. 1983.

WHEREFORE, Plaintiff requests judgment against the City of Pittsburgh for compensatory damages and for the recovery of costs and attorney's fees, and such other relief as the Court deems appropriate and/or equitable under the circumstances.

Respectfully submitted,

/s/ Margaret S. Coleman
PA ID# 200975

Law Offices of Timothy P. O'Brien
2103 Investment Building
239 Fourth Avenue
Pittsburgh, PA  15222
(412) 232-4400

Attorney for Plaintiff