IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARIAN BALCOM, | ) |
| | ) 2:19-cv-00506 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Cynthia R. Eddy |
| | ) |
| CITY OF PITTSBURGH, GABE FIGUEROA, JORGE ZARATE, OFFICER LEO, OFFICER DONNOLLEY AND OFFICER SMITH. | ) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |
| | ) |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**

Defendants City of Pittsburgh ("City"), Detective Gabe Figueroa ("Det. Figueroa"), Officer Jorge Zarate ("Officer Zarate"), Officer Thomas Leo ("Officer Leo"), Officer Cody Donnelly ('Officer Donnelly") and Officer Michael Smith ("Officer Smith") respectfully submit this Brief in support of their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

**I.      INTRODUCTION**

Plaintiff's Amended Complaint sets forth First Amendment claims based on Plaintiff's lawful arrest. Plaintiff offers an obviously incomplete version of events detailing her arrest on December 18, 2017. On this date, Plaintiff entered an apartment without the tenant's permission and took the tenants cats. Based on her actions, Plaintiff was charged with Burglary, 18 Pa. C.S.A. § 3502, Criminal Trespass, 18 Pa. C.S.A. § 3503, and Theft by Unlawful Taking, 18 Pa. C.S.A. § 3921. In Her Amended Complaint Plaintiff offers excuses claiming that the arresting officers should have known and considered her inapplicable legal defenses before charging her. On the night Plaintiff was legally arrested she attempted to divert officers' attention from an apparent

1

crime by complaining about the Officers behavior. Plaintiff's Amended Complaint confuses alleged protected speech with an "inartful turn of phrase" and "perceived slight," and ultimately fails to allege any Constitutional claims whatsoever. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1725 (2019).

**II.    BACKGROUND**

On Monday, December 18, 2017, Plaintiff was arrested after she stole two cats from a nearby apartment. ECF No. 9 ¶¶ 9, 10-11, 16. Plaintiff alleges that the owner of the nearby apartment building "asked her, in writing, to enter an apartment in his building to feed dogs which he believed had been abandoned."[1] ECF No. 9, ¶ 9. Plaintiff does not allege that the apartment tenant or dog owner gave her permission to enter this apartment, nor does she allege when the landlord's written request was made or communicated. When Plaintiff decided to act on the landlords alleged request, Plaintiff's friend, Matthew Grebner ("Mr. Grebner") "offered to accompany her." *Id*. Plaintiff claims that when she and Mr. Grebner entered the apartment they found two cats. *Id*. at ¶ 10. Plaintiff does not explain what happened to the alleged dogs in the apartment. Plaintiff alleges that she took the cats and put them in a vacant apartment in her own building. *Id.* at ¶ 11. Subsequently, Plaintiff claims that the Defendant Officers arrived at Plaintiff's vacant apartment accusing Plaintiff of illegally entering the next door apartment and stealing the two cats, which is exactly what Plaintiff alleges she did. *Id.* at ¶ 12. Defendant Officers ordered Plaintiff and Mr. Grebner outside where, Plaintiff claims Officer Figueroa called Plaintiff "sweetheart." *Id.* at ¶ 13. Plaintiff alleges that she asked to not be called "sweetheart" and "questioned whether he was performing his duties in accordance with his training." *Id*. at ¶ 14. While Plaintiff was allegedly questioning the Defendant Officers Det. Figueroa allegedly asked

---

[1] Neither Plaintiff's Complaint nor her Amended Complaint attached the alleged writing.

Plaintiff whether she was a supporter of President Donald Trump," Plaintiff answered no. *Id*. 15. Plaintiff does not make any allegations that she was engaged in an activity that could be considered protected speech. Det. Figueroa allegedly "told Ms. Balcom that he was glad Trump had won the election" and then placed Plaintiff under arrest. *Id*. Following her arrest Plaintiff was transported to the Allegheny County Jail where she was held overnight and released the following day on her own recognizance. ECF No. 9 ¶ 16, 23. Plaintiff's charges were withdrawn at her preliminary hearing. ECF No. 9, ¶ 26. On the night Plaintiff and Mr. Grebner entered the nearby apartment, Mr. Grebner was not charged with any criminal offenses. *Id*. at ¶¶ 17, 22.

## III.     STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to federal Rule of Civil procedure 12(b)(6), "all well-pleaded allegation of the compliant must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inference must be drawn in favor of them." *McTernan v. City of New York*, 577 F.3d 521, 526 (3d Cir. 2009) (Citation omitted). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224,233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the compliant conceivable fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusations." *Fowler v. UPMC Shadyside*, 578 F.3d 203,210-11 (3d Cir. 2009) (internal quotations omitted). A court in making this determination

must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (quotations omitted)).

The Third Circuit has set forth a three step test for "a court reviewing the sufficiency of a complaint." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). A court should proceed as follows: First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." [*Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)]. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. At 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (Citation and editorial marks omitted)). Finally, "[w]hen there are well pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (internal citations omitted).

## IV.   ARGUMENT

**A. Plaintiff's Second Amended Complaint fails to state a claim of a Constitutional injury.**

> **i. Plaintiff fails to state a claim against Det. Figueroa for a violation of her first amendment rights because she fails to plead facts showing she was engaged in protected speech and fails to allege facts showing that there was no probable cause.**

Plaintiff alleges that Det. Figueroa violated her First Amendment right to criticize the police and express her political views and affiliations. ECF No. 9, ¶ 1, 27, 29. Plaintiff's First Amendment retaliation claims should be dismissed because Plaintiff was not engaged in constitutionally protected speech and because Det. Figueroa had probable cause to effect an arrest.

Constitutional retaliation claims are analyzed under a three part test asking: whether (1) an individual engaged in a constitutionally protected activity; (2) the government responded with retaliation; and (3) the protected activity caused the retaliation. *Eichenlaub v. Twp. Of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). Speech is constitutionally protected when it is a "matter of public concern." *Feldman v. Community College of Allegheny (CCAC)*, 85 Fed. Appx. 821, 824 (3d Cir. 2004) (internal citations omitted). Speech implicates a matter of public concern "if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cty.*, 544 F.3d 542, 548 (3d Cir. 2008). In contrast, speech on matters of purely private concern is of less First Amendment concern. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 259 (1985). Here, Plaintiff's speech does not involve a matter that is of concern to the community. Plaintiff's expression of her personal questions regarding one City of Pittsburgh police officer and her personal political affiliations are matters of private concern. There is no allegation that any other person in the community wanted to or was interested in whether Plaintiff did not like to be called "sweetheart" or whether she liked the President of United States. Critically, Plaintiff's Amended Complaint fails to state that Plaintiff was first engaged in speech and then the police allegedly responded, as a result of her speech, with retaliation. Plaintiff instead alleges that law enforcement responded to her theft and then allegedly called her "sweetheart." ECF No. 9 ¶¶ 12-13. Plaintiff fails to allege that her speech was constitutionally protected as it was not a matter of public concern. Further Plaintiff fails allege that the Defendant Officers were allegedly retaliating to her speech, rather than her responding to the Defendant Officers, therefore Court's analysis can stop here and Plaintiff's claims should be dismissed.

However, if the Court proceeds with its injury, in addition to alleging that her speech was protected, Plaintiff must also "plead and prove the absence of probable cause for the arrest." *Nieves*, 139 S.Ct. 1724. In order to plead the absence of probable cause Plaintiff's claims must be based on actual facts, not based on mere conclusions about an officer's state of mind and cannot rely only upon an "inartful turn of phrase or perceived slight" by an officer. *Id*. at 1725. Here, Plaintiff relies solely on a perceived slight against her. Plaintiff claims that after she was caught red handed with her neighbor's property[2] the Defendant Officers inexplicably appeared and accused her of doing exactly what her Amended Complaint alleges she did- steal her neighbors cats.

Plaintiff attempts, unsuccessfully, to avoid the "no-probable-cause requirement" by including Equal Protection Claims. ECF No. 9 ¶¶ 1, 38, 42. However, Plaintiff's attempt is again thwarted by her own factual allegations. In order to avoid the "no-probable-cause requirement," a plaintiff must allege that "[s]he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. 1727. Plaintiff baldly concludes that Grebner was not arrested simply because he is not a woman. ECF No. 9 ¶ 22. However, this conclusion conflicts directly with the facts alleged regarding Plaintiff's own behavior. For example, Plaintiff claims that after she was called "sweetheart" she immediately reacted by asking Det. Figueroa "not to call her 'Sweetheart' and questioned whether he was performing his duties in accordance with his training." *Id*. at ¶ 14. Plaintiff does not allege that Mr. Grebner reacted to or questioned the police. Plaintiff's reaction of arguing with the officers is the kind of speech that "is often a 'wholly legitimate consideration' for officers when deciding whether

---

[2] "Pennsylvania law considers [cats] to be personal property." *Desanctis v. Pritchard*, 803 A.2d 230, 232 (Pa. Super. Ct. 2002).

to make an arrest." *Id*. at 1724 (quoting *Reichle v. Howards*, 566 U.S. 658, 668 (2012)). Further, Plaintiff's conclusions that Mr. Grebner was similarly situated should be disregarded because Plaintiff's allegations demonstrate the difference between the two. First it is clear that Mr. Grebner was not asked to take care of the dogs by the land lord. Next, Plaintiff was caught with the cats in her vacant apartment, the cats were not found in Mr. Grebner's possession. Mr. Grebner and Plaintiff cannot be fairly compared because they are not similarly situated as demonstrated by Plaintiff's own claims.

Plaintiff's facts not only fail to show that she was engaged in protected speech and fail to establish an absence probable cause, the facts alleged in the Amended Complaint actually establish that Defendant Officers did actually have probable cause to arrest Plaintiff. In Pennsylvania, a person commits Burglary if "with the intent to commit a crime therein, the person enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations." 18 Pa. Cons. Stat. Ann. § 3502(a)(2). Plaintiff admits in her Complaint that she entered a "building neighboring" one that she owned, not a building that she actually lived in or owned to "feed dogs". ECF No. 9 ¶ 9. Plaintiff does not allege that she had permission from the tenant, that she knew the tenant, or that she had any personal suspicions that a dog was abandoned in the apartment. Plaintiff, who is not an animal control officer, does not allege that she attempted to call animal control or police or that she had actual legal authority to remove any animals. Plaintiff's allegation that she had "permission" from the landlord of the tenant victim is of no value considering the building owner did not have the authority to allow someone to enter a tenant's apartment without that tenant's permission, Plaintiff exceeded the scope of the alleged permission, and because the Defendant Officers were not required to investigate her legal defense. *D.C. v. Wesby*, 138 S.Ct. 577, 588 (2018)("probable cause does not require officers to

rule out a suspect's innocent explanation for suspicious facts. As we have explained, the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts")(internal quotations omitted). When the Defendant Officers found Plaintiff with the stolen cats that she admitted she had taken from the tenants apartment they had probable cause to arrest Plaintiff for multiple, serious crimes. Plaintiff fails to demonstrate that there was a lack of probable cause at the time of her arrest, therefore, Plaintiff's first amendment retaliation claim should be dismissed.

>  ii. **Plaintiff fails to demonstrate that Officers violated her Fourteenth Amendment right to Equal Protection.**

The Fourteenth Amendment provides that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Plaintiff has not made any factual allegations pertaining to or defining the gender stereotypes she allegedly was or was not conforming to, nor has she stated how Det. Figueroa used that in his determination to make an arrest, and thus, her Fourteenth Amendment claims should be dismissed.

>  iii. **Plaintiff fails to demonstrate that Officers violated her Fourth Amendment right to be free from False Arrest and Malicious Prosecution.**

Both "false arrest and malicious prosecution hinge on probable cause, [so] the constitutional violation in question here turns on whether a 'reasonable officer could have believed that probable cause existed to arrest' the plaintiff at that time." *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017). Courts must look to "whether, under the totality of the circumstances, [the officer's] actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003). Here, as previously argued, Officer Figueroa had probable cause to arrest Plaintiff, and thus, both Plaintiff's False Arrest and Malicious Prosecution claims should be dismissed.

To prevail on a claim of malicious prosecution, the plaintiff must prove that the defendant initiated a criminal proceeding, the criminal proceeding ended in the plaintiff's favor, it was initiated without probable cause, the defendant acted maliciously for a purpose other than bringing the plaintiff to justice, and plaintiff suffered a deprivation of liberty consistent with concept of seizure as a consequence of a legal proceeding. *Johnson v. Bignear*, 441 Fed. App'x. 848, 851 (3d Cir. 2011).

Specifically in a § 1983 case, the plaintiff carries the burden of proving that a constitutional violation has occurred and that violation was the proximate cause of his or her injuries. *Burns v. Pa. Dept. of Corrections*, 642 F.3d 163, 181 (3d Cir. 2011) (citing *Carey v. Piphus*, 435 U.S. 247, 260, 98 S. Ct. 1042 (1978)). When a prosecutor elects to proceed with a prosecution, a police officer may only be liable for malicious prosecution if he or she "knowingly or with reckless disregard for the truth concealed exculpatory evidence from or provided false or misleading reports to the prosecutor or otherwise interfered with the prosecutor's ability to exercise independent judgment." *Napier v. City of New Castle*, No. CIV. A. 06-1368, 2009 WL 742688, at *4 (W.D. Pa. Mar. 20, 2009), aff'd, 407 F. App'x 578 (3d Cir. 2010) (citing *Vassallo v. Timoney*, 2001 WL 1243517, at *7 n.8 (E.D. Pa. Oct.15, 2001)). "Reckless disregard means that the officer 'entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id*. at *5 n.4 (citing *Ogborne v. Brown*, 2000 WL 764928, *7 n.13 (E.D. Pa. 2000); and quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). There is no allegation that any Defendant Officer knew or recklessly withheld any exculpatory evidence. Instead, Plaintiff's own claims establish the probable cause and legal basis for the Defendant Officer's objectively reasonable belief that there was probable cause to arrest Plaintiff.

**B.    Detective Figueroa and Officers Zarate, Leo, Donnelly and Smith are, at a minimum, entitled to qualified immunity.**

The question of qualified immunity is properly answered by the Court because it is a matter of law, not fact. *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007). Qualified immunity is not simply a defense to liability; rather, it completely protects an official from suit and, therefore, should be "considered at the earliest possible stage of the proceedings." *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009). Qualified immunity will attach "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). An official will be stripped of qualified immunity only if he (1) violates a constitutional right and (2) that right was "clearly established" at the time of the alleged violation. *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011). The burden properly rests with a plaintiff to point to controlling precedent that places the alleged right beyond debate. See *Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014); *Wilson v. Layne*, 526 U.S. 603 (1999). Furthermore, "[t]he protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)).

**i.     Claims against Officer Figueroa should be dismissed because he did not violate Plaintiff's Constitutional rights and because he did not violate any clearly established law.**

Here, Plaintiff fails to point to any controlling precedent that shows her alleged right was clearly established at the time of her arrest. In the analysis of qualified immunity questions, courts have been cautioned "not to define clearly established law at a high level of generality." *Kisela v.*

*Hughes*, 138 S.Ct. 1148, 1152 (2018). Here, Plaintiff generalizes her Constitutional claims in the broadest sense, which is insufficient to maintain a claim against any of the Defendant Officers. An individual does not have a clearly established right to avoid arrest when there is probable cause simply because she "criticize[s] the police and express[s] political views and affiliations" especially after officers observe probable cause for an arrest. ECF No. 9 at ¶ 1.  And here, It is clear that the contours of Plaintiff's alleged right were not "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff* at 779.

In fact, in her Amended Complaint Plaintiff alleges a factual scenario that precludes claims under § 1983 against the Officers because she alleges a scenarios that the Supreme Court has already stated is not a clearly established right. See *Nieves*, 139 S.Ct. 1728 (when there is probable cause to arrest, retaliatory arrest claims fail as a matter of law). Although Plaintiff makes claims that Officer Figueroa "called Ms. Balcom 'Sweetheart'" and referred to Plaintiff as a "bleeding heart liberal," these allegations do not erode or erase the probable cause basis alleged by Plaintiff in her own complaint nor do Officer Figueroa's alleged statements violate Plaintiff's alleged first amendment rights. Officer Figueroa, as discussed below, did not violate Plaintiff's alleged Constitutional rights, and thus, is entitled to qualified immunity even at this early juncture.

**ii.    Claims against Officers Zarate, Leo, Donnelly and Smith should all be dismissed because they are each individually entitled to qualified immunity.**

Here, Plaintiff's claims are the exact type of suit that officers should be shielded from on the basis of qualified immunity. Officers Zarate, Leo, Donnelly and Smith are all individually entitled to qualified immunity under the given circumstances. As the basis of these Officer's liability, Plaintiff simply concludes that Officers Zarate, Leo, Donnelly and Smith "were aware of Figueroa's unconstitutional actions but failed to intervene to prevent the violation of [Plaintiff's] [C]onstitutional [R]ights". ECF No. 9 ¶ 30. Even at this early stage, this singular legal conclusion

is insufficient to maintain a claim against Officers Zarate, Leo, Donnelly and Smith. Plaintiff fails to allege any facts that demonstrate when Officers Zarate, Leo, Donnelly and Smith could have intervened and when they allegedly failed to intervene to prevent Plaintiff's alleged Constitutional injury. Plaintiff fails completely to allege to any facts indicating that the officers heard, saw or had any knowledge of the alleged interaction between Plaintiff and Officer Figueroa. Moreover, Plaintiff failed to allege facts demonstrating that any of these officers understood that Officer Figueroa's alleged conduct, if it had been observed by these officers, amounted to a violation of Plaintiff's Constitutional Rights.

Plaintiff's lack of factual allegations relating to each of these individually named defendants makes it impossible to distinguish what right was allegedly at issue or whether such right was clearly established such that Plaintiff's claims should overcome the Officers qualified immunity. Officers Zarate, Leo, Donnelly and Smith appear to have been named simply because they may have been in proximity of the scene, not because they had clear opportunity to observe a clear instance of a constitutional violation or because they had a "reasonable opportunity to intervene and simply refused" to prevent a constitutional injury. Officers Figueroa, Zarate, Leo, Donnelly and Smith all are entitled to qualified immunity because Plaintiff has failed to allege, for each of these individual Officers, what alleged right is at issue and how each individual Officer violated that alleged right. Even at this early stage, Plaintiff's claims against Officers Zarate, Leo, Donnelly and Smith should be dismissed because Plaintiff' fails to allege any facts, other than conclusions, that would overcome the Officers qualified immunity or to raise an inference that the Officers failed to intervene in a clear violation of Plaintiff's alleged Constitutional Rights.

**C.     Plaintiff's claims against the City should be dismissed because Plaintiff failed to sufficiently plead a cause of action to support a *Monell* claim.  Failed to allege a pattern of constitutional violations relating to an individual's First Amendment Rights.**

Even if Plaintiff can establish her rights were violated, which she has not, her Amended Complaint still fails to set forth facts establishing a *Monell* claim. In *Monell v. New York City Dep't of Social Services*, the United States Supreme Court held that municipalities and local government units are "persons" subject to liability pursuant to 42 U.S.C. § 1983. 436 U.S. 658 (1978). However, the Court reasoned, municipalities can only be held liable when its "policy or custom, whether made by its lawmakers or by those who edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. At 694. To establish this municipal liability pursuant to § 1983, Plaintiff is required to identify the policy, custom, or practice of the municipality that results in the constitutional violation. *Id*. At 690. The pleading requirements for municipal liability claims based on a policy or custom are similar, but not identical. More importantly however, to make a sufficient claim a complaint must allege non-conclusory facts that raise an inference that "a local government's policy or custom … inflicted the injury in question." *Roman* at *Id.* Policy is created "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Roman,* 914 F.3d at 798 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1980)). To allege that a constitutional injury allegedly resulted from an alleged custom**,** a plaintiff must allege that "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Roman,* 914 F.3d at 798 (quoting *Bielevicz v. Dubinon*, 915 F. 845, 850 (3d Cir. 1990)). To plead either theory of liability a plaintiff must allege enough facts to create an inference of at least one more thing: that the policy or custom was the "proximate cause" of his injuries. *Roman*, 914 F.3d at 798. Proximate cause is alleged by pleading enough facts to "demonstrate[e] an 'affirmative link'" between the alleged

policy or custom and the particular constitutional violation alleged. *Id*. *Roman* also outlines how a failure-to-train claim is different and what the requirements are to allege such a claim.

Instead of pleading claims of municipal liability based on a custom or policy, a Plaintiff can claim municipal labiality under a failure to train theory. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train". *Connick*, 563 U.S at 60. See also *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)("A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivation occurred"). "'Deliberate indifference' is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his or her actions." *Bryan Cty*, 500 U.S. at 410. Further, proving deliberate indifference "typically requires proof of a pattern of underlying constitutional violations. *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). Because of the "stringent standard of fault" required to show this type of liability, it is disfavored by the Supreme Court. *Connick,* 563 U.S. at 60-61. To allege a failure-to-train claim a complaint does not need to allege an unconstitutional policy, instead, a complaint must allege that "a city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Id.,* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). A plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Roman*, 914 F.3d at 798, *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011).

Plaintiff has failed to allege that her injuries were caused by a facially unconstitutional municipal policy. Rather, Plaintiff appears to allege municipal liability based on a custom because she claims that the City had "Notice and Acquiescence" that police officers "frequently engaged in conduct which violated citizens' constitutional rights." ECF No. 9 ¶¶ VI, 33. Then, Plaintiff lists a number of unsubstantiated past cases against the City. *Id.* at ¶¶35(a)-(p). Despite listing these other cases Plaintiff fails to raise an inference that the City had a course of conduct, rather than allegations, "so well-settled and permanent as virtually to constitute law" because she fails to allege that any of these cases were more than unsubstantiated claims. Furthermore, Plaintiff's Amended Complaint fails to create an inference that the City's alleged custom acted as the "proximate cause" of her injuries. Plaintiff lists only cases relating to Fourth Amendment, mostly excessive force allegations and fails to allege any cases or facts that the City permitted an alleged pattern of First Amendment violations so clear as to "demonstrate an 'affirmative link'" between these listed cases and the instant Plaintiff's alleged injuries. *Roman*, 914 F.3d at 798. Furthermore, Plaintiff fails to make clear if these cases relate to a pattern of a certain type of Constitutional allegation or if they are alleged Constitutional violations against a person in a protected class.

Plaintiff also fails to establish an inference that the City failed to train its officers to avoid Constitutional violations because she failed to identify a specific training that would have a causal nexus between her injuries and the absence of that specific training. Plaintiff only alleges barebones conclusions and threadbare recitals of the elements of cause of action for a failure to train claim, which is insufficient. Plaintiff's claims against the City should be dismissed for a failure to allege a pattern of constitutional violations or a lack of training with a causal connection to her alleged Constitutional injuries.

**V.    CONCLUSION**

For the foregoing reasons and for the reasons stated in their Motion, Defendants respectfully request that all claims against them in Plaintiff's Amended Complaint be dismissed. Furthermore, Plaintiff's Amended Complaint should be with prejudice. The Third Circuit has held that in civil rights cases "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245(3d Cir. 2008)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d Cir. 2002). However, this leave "may be denied for futility if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 841 (3d Cir. 2014) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) and citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Here, allowing further amendment of Plaintiff's Amended Complaint would be futile based on the allegations made by Plaintiff.

Respectfully submitted,

/s/ *Julie E. Koren*
Julie E. Koren (Pa. ID 309642)
   Assistant City Solicitor
414 Grant Street
Pittsburgh, PA 15219
Julie.Koren@pittsburghpa.gov
*Counsel for Defendants City of Pittsburgh, Detective Figueroa, Officer Leo, Officer Zarate, Officer Donnelly, and Officer Smith.*