IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| DARIAN BALCOM, | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-CV-00506-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF PITTSBURGH, GABE | ) | |
| FIGUEROA, INDIVIDUALLY; JORGE | ) | |
| ZARATE, OFFICER  LEO, OFFICER | ) | |
| DONNOLLEY, OFFICER  SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Cynthia Reed Eddy, Chief United States Magistrate Judge.

### I.      RECOMMENDATION

This civil action was initiated on May 2, 2019 by Plaintiff Darian Balcom alleging several civil rights violations against multiple City of Pittsburgh police officers in connection with criminal charges brought against her in Allegheny County, Pennsylvania and were ultimately dismissed at the preliminary stages.  This court has original subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1331.

Presently before the court is a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) by all Defendants. (ECF No. 13).  For the reasons that follow, it is respectfully recommended that the motion to dismiss be granted in part and denied in part.  It is specifically recommended that the motion to dismiss be granted as to Plaintiff's municipal liability claim and Plaintiff be granted leave to amend her complaint provided she can support such a claim and that the remainder of Defendants' motion to dismiss be denied.

1

## II.     REPORT

### a. Background

Plaintiff Darian Balcom owns and manages rental properties in the City of Pittsburgh, Pennsylvania. Am. Compl. ("AC") (ECF No. 9) at ¶ 8.  On December 18, 2017, the owner of a building neighboring one owned by Plaintiff asked Plaintiff to enter an apartment in his building to feed dogs which he believed had been abandoned. *Id*. at ¶ 9.  Plaintiff agreed and her friend, Matthew Grebner offered to accompany Plaintiff to the abandoned apartment. *Id*.  When Plaintiff and Mr. Grebner arrived at the apartment that evening, they discovered two cats that appeared neglected and malnourished. *Id*. at ¶ 10.  Plaintiff and Mr. Grebner took the cats to an empty unit in Plaintiff's apartment building next door to provide them with food, water, and a clean litterbox. *Id*. at ¶ 11.

As Plaintiff and Mr. Grebner situated the cats in Plaintiff's vacant apartment unit, Defendants City of Pittsburgh police officers Figueroa, Zarate, Leo, Donnolley and Smith entered the apartment without her consent and without a warrant. *Id*. at ¶ 12.  Officer Figueroa accused Plaintiff of illegally entering the apartment next door and stealing the cats. *Id*.  Plaintiff alleges that Officer Figueroa did not give them the opportunity to explain that they had written authorization from the building's owner to enter the apartment. *Id*.  The Defendant officers ordered Plaintiff and Mr. Grebner outside where, during an exchange between Plaintiff and Officer Figueroa, Officer Figueroa called Plaintiff "sweetheart." *Id*. at ¶ 13.  Plaintiff asked Officer Figueroa not to call her "sweetheart" and questioned whether Officer Figueroa was performing his duties in accordance with his training. *Id*. at ¶ 14.  Officer Figueroa then asked Plaintiff whether she was a supporter of President Donald Trump. *Id*. at ¶ 15.  Plaintiff responded that she was not a Trump supporter. *Id*.  Officer Figueroa then told Plaintiff that he was glad that Trump had won

the election. *Id*.  Officer Figueroa then placed Plaintiff under arrest. *Id*. at ¶ 16.  Officer Figueroa did not place Mr. Grebner under arrest. *Id*. at ¶ 17.  Plaintiff alleges that no officers asked Mr. Grebner about his political beliefs or called him "sweetheart." *Id*. at ¶ 18.

Officer Figueroa then informed Mr. Grebner that Plaintiff had done nothing wrong, but he intended to arrest her or have her arrested because she "sassed" the officers. *Id*. at ¶ 19.  Officer Figueroa also referred to Plaintiff as a "bleeding heart liberal." *Id*.  Plaintiff alleges that the other officers were aware that Officer Figueroa had arrested Plaintiff or had her arrested because of her gender and/or political beliefs and because she had criticized his behavior but took no action to intervene and prevent the arrest. *Id*. at ¶ 20.  Mr. Grebner was released from the scene and was not charged with any criminal offenses in connection with the situation. *Id*. at ¶ 22.  Plaintiff was placed in the back of a patrol car and taken to Allegheny County Jail where she was held overnight and released on her own recognizance the following day. *Id*. at ¶ 23.  Plaintiff was charged with felony burglary, felony criminal trespass and misdemeanor theft by unlawful taking. *Id*. at ¶ 24. Plaintiff's preliminary hearing was postponed twice at the request of the prosecution, causing Plaintiff to incur attorneys' fees to prepare for and attend the three scheduled preliminary hearings. *Id*. at ¶ 25.  The third time Plaintiff appeared for her preliminary hearing all charges were withdrawn. *Id*. at ¶ 26.

Plaintiff alleges that Officer Figueroa arrested her because of her political affiliation including because he perceived her to be a "bleeding heart liberal" and because she expressed opposition to Donald Trump.  Additionally, Plaintiff alleges that Officer Figueroa arrested her for engaging in protected speech including criticizing a law enforcement officer and criticizing an elected official.  Further, Plaintiff alleges that Officer Figueroa arrested her because of her gender and/or her failure to conform to gender stereotypes.  Plaintiff alleges that the other officers at the

scene failed to intervene to prevent the violation of Plaintiff's constitutional rights. Lastly, Plaintiff claims that the Defendant City of Pittsburgh was on notice that City of Pittsburgh police officers frequently engage in conduct which violates citizen's constitutional rights and then file false criminal charges to justify such conduct to protect themselves from civil liability and the City of Pittsburgh failed to take any action to prevent officers from engaging in such unconstitutional conduct.

Plaintiff alleges the following claims against the following Defendants:

1. A First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against Officers Figueroa, Zarate, Leo, Donnolley and Smith;

2. A Fourteenth Amendment equal protection claim pursuant to 42 U.S.C. § 1983 against Officer Figueroa, Zarate, Leo, Donnolley and Smith;

3. A Fourth Amendment false arrest and/or malicious prosecution claim pursuant to 42 U.S.C. § 1983 against Officer Figueroa Zarate, Leo, Donnolley and Smith; and

4. A *Monell* municipal liability claim pursuant to 42 U.S.C. § 1983 against the Defendant City of Pittsburgh for the First, Fourth and Fourteenth Amendment claims.

Defendants presently move to dismiss all the claims set forth in Plaintiff's complaint.

b. Standard of Review

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining

5

whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

As a general rule, if a court "consider[s] matters extraneous to the pleadings" on a motion for judgment on the pleadings, the motion must be converted into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n. 5 (3d Cir. 2004); *Pension Benefit Guaranty Corp. v. White Consol. Indus.*, *Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

    c. <u>Discussion</u>

Defendants move to dismiss Plaintiff's complaint for myriad reasons. Each argument will be addressed in turn.

    *i. First Amendment retaliation*

First, Defendants argue that Plaintiff has failed to state a claim for First Amendment retaliation because she has failed to allege facts that show she was engaged in constitutionally protected speech and has failed to allege facts that show the absence of probable cause for her arrest.

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To state a claim for First Amendment retaliation, a plaintiff must show that they (1)

engaged in protected speech or activity; (2) the government responded to that speech or activity with retaliation; and (3) that the protected speech or activity was the cause of the government's retaliation. *Nieves v. Bartlett*, --- U.S. ---, ---, 139 S. Ct. 1715, 1722, 204 L.Ed.2d 1 (2019).

As to Defendants' argument that Plaintiff was not engaged in constitutionally protected speech, this argument is summarily rejected. When Plaintiff questioned whether Officer Figueroa was acting in accordance with his training and responding that she did not support Donald Trump to Officer Figueroa's question, she was engaged in protected speech. *See City of Houston v. Hill*, 482 U.S. 451, 461 (1987) ("The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."); *Bridges v. State of Cal.*, 314 U.S. 252, 270 (1941) ("[I]t is a prized American privilege to speak one's mind . . . on all public institutions"); *Bennis v. Gable*, 823 F.2d 723, 731 (3d Cir. 1987) ("A citizen's right to not support a candidate is every bit as protected as his right to support one."); *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 284 (3d Cir. 2004) ("[P]rivate speech (unless obscene or fighting words or the like) is ... protected."). " '[T]here is practically universal agreement that a major purpose' of the First Amendment '[is] to protect the free discussion of governmental affairs.' " *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976)). Accordingly, Defendants' argument that Plaintiff was not engaged in protected speech is rejected.

Next, Defendants argue that there was probable cause to arrest Plaintiff, so her First Amendment retaliation claim fails. For a retaliatory arrest or prosecution claim made pursuant to the First Amendment, the plaintiff only meets the causation requirement if she adequately pleads the total absence of probable cause for the underlying charges. *Nieves*, 139 S. Ct. at 1723 (retaliatory arrest); *Hartman,* 547 U.S. at 263-65 (retaliatory prosecution). However, the "no-probable-case requirement should not apply when a plaintiff presents objective evidence that [s]he

was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727 (citations omitted).   In this instant matter, Plaintiff alleges that she and Mr. Grebner engaged in the exact same conduct which led to Plaintiff's arrest – *i.e*., entering the abandoned apartment with the purpose of removing the abandoned pets and putting the pets in another apartment – yet he was not arrested.  Further, Mr. Grebner was not alleged to have criticized police conduct or informed the officers of his nonsupport for a political leader that Officer Figueroa claimed to have supported.  Thus, at this procedural stage, Defendants have not met their burden that as a matter of law the "no-probable-cause" requirement applies and Plaintiff has alleged sufficient facts in which discovery could reveal that she was retaliated against for engaging in activity protected under the First Amendment.  Even if the "no-probable-cause" requirement applies, the determination of whether probable cause existed in this instance would require a factually specific determination that is not proper at this procedural juncture.  *Nieves*, 139 S. Ct. at 1721 (probable cause issue decided at summary judgment); *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (same).  The existence of probable cause would turn on what the Defendant Officers knew at the time of Plaintiff's arrest, which is a matter better decided with the benefit of a completed record.  Otherwise, the court would be impermissibly viewing the facts outside of the complaint and in the light most favorable to Defendants.

Accordingly, it is respectfully recommended that Defendants' motion to dismiss with respect to Plaintiff's First Amendment retaliation claim be denied.

### ii.  *Equal protection*

Next, Defendants argue that Plaintiff's Fourteenth Amendment equal protection claim fails because Plaintiff and Mr. Grebner are not similarly situated because Mr. Grebner did not "react or

question[]" police action. Defs.' Br. (ECF No. 14) at 6.  Additionally, Defendants argue that Plaintiff fails to allege any facts alleging what gender stereotypes she was allegedly not conforming to.

The Fourteenth Amendment Equal Protection Clause provides that no State may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This edict is "essentially a direction that all persons similarly situated should be treated alike." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (citations omitted).  To bring an equal protection claim, a plaintiff must "show that she is a member of a protected class[,]" *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002) and "prove the existence of purposeful discrimination." *Shuman*, 422 F.3d at 151. (citations omitted).  "In other words, [plaintiff] must demonstrate that [she] received different treatment from that received by other individuals *similarly situated*." *Id*. (citations omitted) (emphasis in original).  A plaintiff may prove different treatment by " 'naming similarly situated members of an unprotected class' who were treated differently or 'by submitting statistical evidence of bias.' " *Davila v. N. Reg'l Joint Police Bd.*, 370 F. Supp. 3d 498, 523 (W.D. Pa. 2019) (quoting *Bradley*, 299 F.3d at 206).  Here, Plaintiff must allege specific facts that show the disparate treatment made on the basis of her gender.

Selective enforcement of facially neutral laws is prohibited by the Constitution. *Wren v. United States*, 517 U.S. 806, 813 (1996). *See also Davila*, 370 F.Supp.3d at 523.  A plaintiff alleging selective enforcement of laws prohibited by the Equal Protection Clause must sufficiently allege that "the challenged law enforcement practice had a discriminatory effect and was motivated by a discriminatory purpose." *Carrasca v. Pomeroy*, 313 F.3d 828, 834 (3d Cir. 2002).  To prove discriminatory purpose, it must be shown that the officer "selected or reaffirmed a particular course

of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte v. United States*, 470 U.S. 598, 610 (1985) (quoting *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

To the extent Defendants argue that Plaintiff and Mr. Grebner are not similarly situated because Mr. Grebner did not speak out against police conduct, this argument is rejected. "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir.2008) (internal citations and quotation marks omitted). Here, Plaintiff and Mr. Grebner both engaged in the same conduct, *i.e.*, entering the apartment of another, taking pets from that apartment, and putting them in another apartment. Plaintiff was arrested for felony burglary, felony criminal trespass and misdemeanor theft by unlawful taking, whereas Mr. Grebner was not criminal charged. None of the crimes that Plaintiff was charged with relate to her not cooperating with law enforcement or based upon her complaints about police conduct. Accordingly, Plaintiff and Mr. Grebner are proper comparators. As for Defendants' argument that Plaintiff has failed to allege facts concerning how she was discriminated against on the basis of gender, this argument is rejected, as Plaintiff has alleged that Officer Figueroa told Mr. Grebner that he was going to arrest Plaintiff because she "sassed" Officer Figueroa after she objected to Officer Figueroa calling her "sweetheart." These facts are sufficient to show that Plaintiff was discriminated on the basis of gender, because Mr. Grebner was not referred to as "sweetheart," which used in this context can be implied as a dismissive term used to describe women or girls, and the colloquial term "sass" which used in this context can be implied as a derogatory term used to describe insubordinate behavior by women and girls.

Accordingly, it is respectfully recommended that Defendants' motion to dismiss be denied with respect to Plaintiff's Fourteenth Amendment equal protection claim.

iii.  *False arrest and malicious prosecution*

Next, Defendants argue that Plaintiff's Fourth Amendment false arrest and/or malicious prosecution claim fails because there was probable cause to arrest Plaintiff.

Plaintiff's false arrest/malicious prosecution claim under the Fourth Amendment requires the following five elements: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014). "The determination that probable cause exists is fundamentally a factual analysis that must be performed by the officers at the scene.  It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984).  Similarly, the existence of probable cause for a Fourth Amendment claim is a factual issue in which judgment as a matter of law in favor of a defendant officer is typically only appropriate where the facts are undisputed, and the facts clearly show that probable cause existed. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995).  This is not such a case.  To find as a matter of law at this procedural juncture that Defendant Officers had probable cause to arrest and charge Plaintiff, it would require a factually intensive analysis of what the officers knew at the time of Plaintiff's arrest, including, for example, whether they knew Plaintiff was given permission by the owner of the building to gain entry to the apartment.[1]  These types of factual determinations

---

[1]     Plaintiff alleges that the tenant had abandoned dogs inside of the apartment, ostensibly abandoning possession of the property.  Notwithstanding what rights to entry the property owner retained under the tenant's lease, under Pennsylvania law, "an abandonment of the premises by

are not proper for the motion to dismiss stage and should be made, if by the court at all, with the benefit of a completed factual record.

Accordingly, it is respectfully recommended that Defendants' motion to dismiss with respect to Plaintiff's Fourth Amendment false arrest/malicious prosecution claim be denied.

### iv.   Qualified immunity

Next, Officer Defendants argue that they are entitled to qualified immunity because they did not violate any clearly established law.  Qualified immunity shields government employees sued in their personal capacities from liability unless their conduct violates "clearly established statutory or constitutional rights . . . which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In determining whether a government official is entitled to qualified immunity, courts apply a two-part test: (1) whether the facts alleged by the plaintiff establish a violation of a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged violation such that a reasonable official would understand what he is doing violates that right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The court can begin with either prong. *James v. New Jersey State Police*, --- F.3d ---, ---, No. 18-1432, 2020 WL 1922370, at *2 (3d Cir. Apr. 21, 2020).

The second prong "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, --- U.S. ---, ---, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (internal quotation marks and citations omitted).  This "inquiry is an 'objective (albeit fact-

---

the tenant is a relinquishment which, as a matter of law, justifies immediate repossession by the landlord." *Turnway Corp. v. Soffer*, 336 A.2d 871, 877 (Pa. 1975).  Again, these are examples of issues of fact that must necessarily be developed in discovery to determine what the Defendant Officers knew at the time of Plaintiff's arrest.

specific) question,' under which '[an officer]'s subjective beliefs . . . are irrelevant.' " *James*, 20202 WL 1922370 at *3 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

In the instant case, based on the foregoing, Plaintiff has adequately alleged constitutional violations under the First Amendment, Equal Protection Clause of the Fourteenth Amendment and the Fourth Amendment, which were all clearly established at the time of Plaintiff's arrest.  As for the onlooking Officers Zarate, Leo, Donnelly and Smith, they argue they are entitled to qualified immunity because there are not facts in the complaint "indicating that [these] officers heard, saw or had any knowledge of the alleged interaction between Plaintiff and Officer Figueroa." Defs.' Br. (ECF No. 14) at 12.  It is reasonable to infer from the complaint that these officers' proximity to the scene of the arrest could lead to evidence that they had knowledge of the interaction between Plaintiff and Officer Figueroa and failed to intervene in the alleged constitutional violation. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983") (citations and internal quotation marks omitted).

Accordingly, Defendants have not shown their entitlement to qualified immunity at this stage, and therefore it is respectfully recommended that their motion in this respect be denied.

> v.   *Monell liability*

Lastly, Defendant City of Pittsburgh argues that the municipal liability claims should be dismissed because Plaintiff failed to identify a policy or custom of engaging in related unconstitutional practices, or identify a specific training that has a causal nexus between her injuries and the absence of that training.

A local government may be liable under section 1983 if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such

deprivation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 US. 658, 692 (1978).  Local governments are only responsible for "their own illegal acts[,]" and are not vicariously liable for their employees' actions. *Id*. at 665-683; *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986); *Canton v. Harris*, 489 U.S. 378, 392 (1989).

To establish municipal liability pursuant to section 1983, the plaintiff must identify the policy, custom, or practice of the municipal defendant that results in the constitutional violation. *Monell*, 436 U.S. at 690-91.  Here, Plaintiff generally asserts that the City of Pittsburgh has a policy, custom or practice of failing to address police officer misconduct that rises to the level of constitutional violations and provides a list of all lawsuits against the City of Pittsburgh for alleged officer misconduct spanning over a decade.  Such generalities are insufficient to state a *Monell* liability claim.  Plaintiff must identify a policy, custom or practice of the City of Pittsburgh which results in First Amendment retaliation, a violation of the Equal Protection Clause and/or false arrest/malicious prosecution under the Fourth Amendment to support her *Monell* claim, and not constitutional violations which share no factual nexus with the ones alleged here.

Accordingly, it is respectfully recommended that Defendants' motion to dismiss Plaintiff's *Monell* liability claim be granted and that this claim be dismissed without prejudice for Plaintiff to amend her complaint should she have the proper factual support for said claim.

d.   Conclusion

Based on the foregoing, it is respectfully recommended that Defendants' motion to dismiss be granted in part and denied in part.  It is specifically recommended that the motion to dismiss be granted as to Plaintiff's municipal liability claim and Plaintiff be granted leave to amend her complaint provided she can support such a claim and that the remainder of Defendants' motion to dismiss be denied.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until **May 12, 2020** to file objections to this report and recommendation.  Unless otherwise ordered by the District Judge, responses to objections are due fourteen days after the service of the objections.  Failure to file timely objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: April 28, 2020.                                       Respectfully submitted,
                                                            s/ Cynthia Reed Eddy
                                                            Chief United States Magistrate Judge