IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DARIAN BALCOM, | ) | Case No. 2:19-cv-00506- CRE |
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) |  |
| CITY OF PITTSBURGH, GABE FIGUEROA, JORGE ZARATE, OFFICER LEO, OFFICER DONNOLLEY AND OFFICER SMITH. | ) ) ) ) | Filed Electronically  Jury Trial Demanded |
|  | ) |  |
| Defendants. | ) |  |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Gabe Figueroa ("Defendant Figueroa" or "Officer Figueroa" and Jorge Zarate (Defendant Zarate" or "Officer Zarate"), through undersigned counsel, respectfully submit this brief in support of their motion for summary judgment.

**I.   BACKGROUND**

Defendants Figueroa and Zarate incorporate the information within the Concise Statement of Material Facts and supporting Exhibits filed contemporaneously with this Motion and Brief in Support.

Plaintiff Darian Balcom ("Plaintiff") initiated this action by filing a Complaint on May 2, 2019 (ECF No. 1) concerning an incident that occurred December 18, 2017. At the time of the initial complaint's filing, the named defendants were the City of Pittsburgh, Gabe Figueroa and John Doe. Plaintiff amended her complaint on August 28, 2019, naming the City, Gabe Figueroa,

1

Jorge Zarate, Officer Leo, Officer Donnolley[1], and Officer Smith as defendants (ECF No. 9). Figueroa, Zarate, Leo, Donnelly, and Smith are all City of Pittsburgh Bureau of Police officers.

Defendants filed a motion to dismiss (ECF No. 13), and after full briefing, the Court granted the motion in part, dismissing the City as a defendant. ECF No. 34, Report and Recommendation at ECF No. 30. Defendant Officers Leo, Donnelly, and Smith were dismissed per stipulation on September 9, 2020. Discovery concluded at the end of May, 2021.

Remaining are three claims pursuant to 42 U.S.C. § 1983 against Defendants Figueroa and Defendant Zarate: a First Amendment retaliation claim, a Fourteenth Amendment equal protection claim, and a Fourth Amendment false arrest and/or malicious prosecution claim. Defendants Figueroa and Zarate respectfully ask that the Court dismiss all claims and enter judgment in their favor.

## II.     STANDARD OF REVIEW

A court may grant summary judgment if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The evidence of the non-movant is to be believed, and all justifiable inferences are to beg drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on

---

[1] The correct spelling of this officer's surname is Donnelly.

which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  Put differently, a non-moving party may not merely reassert factual allegations contained in the pleadings, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).  The non-moving party must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Giodotti v. Legal Helpers Debt Resolution, LLC*, 719 F.3d 764, 773 (3d Cir. 2013) (quoting *Celotex*, 477 U.S. at 324).

**III**.    **ARGUMENT**

    A.    Introduction – Consideration of Material Facts

There is a common thread that runs through the legal considerations of the claims that Plaintiff has brought.  For First Amendment retaliation, equal protection/selective prosecution, and false arrest/malicious prosecution claims under 42 U.S.C. § 1983, the law considers not what information the plaintiff had within a larger context, but rather what information was knowable and available to a reasonable police officer under the circumstances at the time of the incident.

From the initiation of this case, Plaintiff has insisted that the effective property managers of 3538 Fleming Avenue, also the first floor residents, had given her permission to enter the upstairs unit to feed dogs there.  Officers Figueroa and Zarate do not dispute this, *but that information is not material to this lawsuit*.  That information would have been material had Plaintiff's charges proceeded to a criminal trial because a belief that a person is licensed or privileged to enter a space is a specifically enumerated defense to Plaintiff's felony charges in the

criminal statutes.[2] However, at the time of Plaintiff's arrest, what Officers Figueroa and Zarate knew – and therefore what matters for the question of summary judgment -- was as follows:

- 911 dispatched them to respond to a report of a burglary (*See* Criminal Complaint, Ex. A; Deposition of Gabe Figueroa, Ex. B, pp. 71-73; Deposition of Jorge Zarate, Ex. C, p. 39; Deposition of Michael Smith, Ex. D, p. 19; Deposition of Cody Donnelly, Ex. E, p. 17);

- Upon their arrival the 911 caller directed them to Plaintiff and Matthew Grebner (Ex. A, COP/BALCOM 0015; Ex. B, pp. 71-73; Ex. C, p. 39);

- Plaintiff confirmed to the officers that she had entered an apartment that was not her own, and said that she "didn't need [] permission" to do so (Ex. A, COP/BALCOM 0015; Ex. G, BALCOM 0056; Deposition of Darian Balcom, Ex. F, pp. 118-119);

- Plaintiff confirmed that the cats, visible to the officers in Plaintiff's apartment, had been taken from Laken Snyder's apartment (Ex. B, p. 75; Ex. D, pp. 19, 22-23; Ex. E, pp. 17-20);

- Burglary (18 Pa.C.S. § 3502), criminal trespass (18 Pa.C.S. § 3503), and theft by unlawful taking (18 Pa.C.S. § 3921) are all crimes with an intent element;

- Matthew Grebner, when questioned by police, reported that he had no reason to believe they were not authorized to enter Laken Snyder's apartment (Ex. G, BALCOM 0115 ("Sworn Statement of Matthew Grebner"));

---

[2] *See* 18 Pa.C.S. § 3502(d): It is a defense to prosecution for burglary if … (3) the actor is licensed or privileged to enter; 18 Pa.C.S. § 3503(c): it is a defense to prosecution under this section (criminal trespass) that (3) the actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain

- Plaintiff presented no evidence that she was authorized to enter Laken Snyder's apartment, and no witnesses were present to confirm that she had been authorized;

- Laken Snyder, the resident of the subject apartment, arrived and told the officers that she had not given Plaintiff authorization to enter her apartment or remove her cats (Ex. A, COP/BALCOM 0015; Ex. B, pp. 87, 91-92, 112-113).

Once probable cause was established, Officers Figueroa and Zarate were not under any duty to seek out exculpatory information for Plaintiff. The seeking out of support for a defense to a crime falls upon the accused. Officers are "under no obligation to give credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *See Swope v. City of Pittsburgh*, 90 F.Supp.3d 400, 408-09 (W.D.Pa. 2015).

Juries or judges sit as fact-finders to determine whether the evidence, including evidence relevant to a defense, is proof beyond a reasonable doubt of the commission of a crime. Evaluating Plaintiff's civil rights case through a criminal court lens would be an improper distortion of the purpose of civil rights lawsuits. Whether her arrest would have resulted in a conviction is not the question to be resolved. The relevant question is whether the actions that Officers Figueroa and Zarate took were reasonable under the circumstances, as the officers understood them at the time. Information beyond those specific circumstances is immaterial.

      B.      <u>The facts show that Officers Figueroa and Zarate had probable cause to arrest Plaintiff; Plaintiff's false arrest/malicious prosecution claim cannot prevail.</u>

A successful Fourth Amendment false arrest/malicious prosecution claim requires all of the following: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of liberty with the concept of seizure as a consequence of a legal proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014). "The determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene. It is the function of the court to determine whether the objective facts available to the officers at the time of the arrest were sufficient to justify a reasonable belief that an offense was being committed." *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984).

In this Court's Report and Recommendation regarding Defendants' Motion to Dismiss, it was noted that a "factually intensive analysis of what the officers knew at the time of Plaintiff's arrest" would include "whether they knew Plaintiff was given permission by the owner of the building to gain entry to the apartment." ECF No. 30, p. 11. Discovery has shown that Plaintiff had a relationship with Jimmy Gitzen and Randy Johnston, the first floor tenants of 3538 Fleming (Balcom Document Production, Ex. G., pp. BALCOM 0048, BALCOM 0052, BALCOM 009). Although they were not the record owners of the property, they served a management capacity for the property, and had communications with the Plaintiff acknowledging that she would enter the building the evening of her arrest when they were not home to feed dogs that were in the upstairs apartment. *Id*.

However, Officers Figueroa and Zarate were dispatched to Fleming Avenue for a reported burglary, they were told by the 911 caller that the actors were Darian Balcom and Matthew Grebner and that they were in the upstairs apartment at 3542 Fleming Avenue. When Plaintiff was asked whether she had permission to be inside the apartment she responded, "I don't need permission" or "I don't need her permission." Ex. A, COP/BALCOM 0015; Ex. G, BALCOM 0056; Deposition

of Darian Balcom, Ex. F, pp. 118-119.  Plaintiff also told Officer Figueroa that she had taken the cats from the upstairs unit of 3538 Fleming.

Plaintiff was arrested and charged with first degree felony burglary, 18, Pa.C.S. § 3502(a)(2), second degree felony criminal trespass, 18 Pa.C.S. § 3503(a)(1)(ii), and third degree misdemeanor theft by unlawful taking, 18 Pa.C.S. § 3921(a).  In order to determine whether Officers Figueroa and Zarate had probable cause for that arrest, it is necessary to consider the elements of each of these offenses.

Under Pennsylvania law, "a person commits the offense of burglary if, *with the intent to commit a crime therein*, the person enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S. § 3502(a)(2) (emphasis added).  It is not enough that an individual unlawfully entered a residence, specifically in this instance, a "separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present."  In order for the act to be a burglary, there must be evidence that the actor also unlawfully entered the residence with the intent of committing a crime there, such as a trespass or a theft.  Plaintiff herself told Officers Figueroa and Zarate that she had entered the apartment and removed the cats.  Her statements provided probable cause to meet the intent element for the charge of burglary.

A criminal trespass occurs when a person, "*knowing that [she] is not licensed or privileged to do so*, breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S. § 3503(a)(ii) (emphasis added).  When asked whether Plaintiff had permission to enter the next door apartment, she responded that she didn't need any permission.  This alone would have been sufficient for the officers to reasonably believe that a crime had been committed,

7

justifying her arrest. This was reinforced when Laken Snyder, the resident of the apartment and owner of the animals inside, arrived at the scene and told the officers that she had not given Plaintiff permission to enter the apartment.

An actor commits a theft by unlawful taking "if [she] *unlawfully takes, or exercises unlawful control* over, movable property of another *with intent to deprive [her] thereof.*" 18 Pa.C.S. § 3921(a) (emphasis added). Again, the information Plaintiff herself provided to Officers Figueroa and Zarate – that she removed the cats from Ms. Snyder's apartment – satisfied the elements for the theft charge.

Plaintiff will most certainly respond that the apartment and the animals inside had been abandoned and that the building managers had given her permission to enter the apartment, but it is not Plaintiff's knowledge or understanding that controls here. What matters is what information the arresting officers had at the time of the arrest, and discovery yielded no evidence that Officers Figueroa and Zarate knew or should have known that Plaintiff believed that she was authorized to be in the upstairs unit of 3538 Fleming Avenue. Further, there is no constitutional right to an error-free investigation. "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released. . . . Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Officers are not constitutionally required "to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. . . . The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury." *Id.*, 145-46.

As probable cause existed for Plaintiff's arrest, her Fourth Amendment false arrest/malicious prosecution must fail. The fact that her charges were ultimately withdrawn has no bearing, either, because withdrawal of charges due to absence of a necessary witness is a determination made by prosecuting attorneys. Pa.R.Crim.P. 551.[3] The matter was listed for a preliminary hearing multiple times, and at each of those listings Laken Snyder, whose testimony regarding whether Plaintiff was permitted to have entered her residence was essential, failed to appear to testify. Amended Complaint, ECF No. 9, ¶¶ 25-26; Ex. G., BALCOM 0047. There is no evidence that Ms. Snyder's disregard of her witness subpoenas was the result of any action taken by Officers Figueroa or Zarate, or for that matter, by any member of the Allegheny County District Attorney's Office.

Officers Figueroa and Zarate respectfully submit that summary judgment should be granted in their favor regarding Plaintiff's Fourth Amendment false arrest/malicious prosecution claim.

C. <u>Probable cause existed to arrest Plaintiff prior to her engagement in protected speech, and the narrow exception established in *Nieves v. Bartlett* does not apply to the instant facts, therefore her arrest was not in retaliation for her exercise of her First Amendment rights.</u>

As discussed *supra*, the information available to Officers Figueroa and Zarate provided them probable cause to believe crimes had been committed and that Plaintiff was the individual responsible for the commission of those crimes. With the exception of Ms. Snyder's interaction with Officers Figueroa and Zarate that evening confirming that she had not given Plaintiff

---

[3] Pa.R.Crim.P. 551: "In any court case pending before an issuing authority, the attorney for the Commonwealth, or his or her designee, may withdraw one or more of the charges. The withdrawal shall be in writing." See also the Comment to this rule: "This rule was amended in 1995 to make it clear that only the attorney for the Commonwealth or a designee has the authority to withdraw a prosecution."

9

permission to enter her apartment, the officers learned all the information regarding Plaintiff's entry into the next door residence *before* Plaintiff engaged in protected speech, therefore, her arrest could not have been made due to retaliation.

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  To prevail on a First Amendment retaliation claim, "a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury.  It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury.  Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722[4] (emphasis in original).

By Plaintiff's own account, the entirety of the incident of protected speech is as follows:

| | |
|---|---|
| Figueroa: | Sweetheart,… |
| Balcom: | Don't call me sweetheart! |
| Another officer: | What should we call you?  Ma'am? |
| Figueroa: | You probably don't like Trump, do you? |
| Balcom: | No, no I don't. |
| Figueroa: | Well I'm glad he won. |

Ex. F, pp. 126-128; Ex. G, BALCOM 0057-0058.  Although the officers disagree that Officer Figueroa brought up then-President Donald Trump at all, no testimony or documents produced in discovery by Plaintiff suggest that anything other than this dialogue concerning Trump took place between the parties.  Officers Figueroa and Donnelly testified that Plaintiff became very upset and

---

[4] United States Reports citation not yet available.

irate when she was told that she was being detained on suspicion of having committed a burglary and with a raised voice, brought up Trump herself. Ex. B, pp. 103-109; Ex. D, p. 31; Ex. E, pp. 26-28. All deposition testimony was consistent that this conversation took place when the parties were outside, after Plaintiff had already told the officers that she had been in the next-door apartment, where she "didn't need [] permission," and had removed the cats. Officer Figueroa testified that the final factor in the decision to arrest Plaintiff was Ms. Snyder, but he already concluded that there was enough information available when he removed Plaintiff outside to charge her with burglary. Although Officers Figueroa and Zarate dispute Plaintiff's version of events, for purposes of this motion for summary judgment the Court should assume that Plaintiff's version of the conversation is true. When taking Plaintiff's version as true, the officers' argument does not change – probable cause preexisted the conversation. Thus, the facts do not support that her arrest was in retaliation for an exercise of protected speech.

The Supreme Court applied *Hartman* to its analysis in *Nieves*, noting that First Amendment retaliation claims will fail as a matter of law when officers have probable cause to arrest, and plaintiffs must plead and prove that there was no probable cause. *Nieves*, 139 S. Ct. at 1723. The Court noted that there could be a "tenuous causal connection between the [officer's] animus and the plaintiff's injury," because "[o]fficers frequently must make split-second judgments when deciding whether to arrest, and the content and manner of a suspect's speech may convey vital information – for example, if he is ready to cooperate or rather presents a continuing threat." *Id.*, at 1723-24.

The *Nieves* Court carved out a very narrow exception, one that Plaintiff is certain to argue should control in her case: "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that [she] was arrested when otherwise similarly situated individuals

not engaged in the same sort of protected speech had not been." *Id*., at 1727.  This exception does not apply here for two significant reasons.  First, the discussion provided by Chief Justice Roberts in the *Nieves* decision as to why this exception is necessary is limited to the "[wide] range of situations" when officers make arrests for minor offenses.  *Id*.   Second, Plaintiff has presented no objective evidence that she and Mr. Grebner were in fact similarly situated.

*Nieves* is rightly concerned that "an unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Id*., at 1727.  Where in the early days of § 1983 causes of action, "officers were generally privileged to make warrantless arrests for misdemeanors only in limited circumstances," now nearly all jurisdictions grant officers the authority to make warrantless arrests for "even a very minor criminal offense." *Id*.[5]   Justice Roberts gives the example of jaywalking as an offense that is rarely enforced and notes,

> If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.  In such a case, because probable cause does little to prove or disprove the causal connection between animus and injury, applying *Hartman*'s rule would come at the expense of *Hartman*'s logic.

*Nieves*, 139 S. Ct. at 1727.

Plaintiff's arrest was neither jaywalking nor a misdemeanor.  The risk to *Hartman*'s no-probable-cause logic simply is not present here.

---

[5] The arrest at issue in *Nieves* was for disorderly conduct and resisting arrest at a music festival.  *Nieves*, 139 S.Ct. at 1720.

Officers Figueroa and Zarate were dispatched for a reported burglary, a first degree felony offense.[6] When they arrived, they were directed to a suspect (Plaintiff) who confirmed that not only did she take cats from an apartment that wasn't hers, but responded that she didn't need permission when she was asked whether she was allowed to be in that apartment. She then became upset when she was escorted outside and detained. Officer Figueroa testified that he believed Plaintiff may have been intoxicated at the time (Ex. B, p. 103), and her own messages to friends after her arrest confirmed that she had in fact been drinking that evening. Ex. G, BALCOM 0698. See also Ex. G, BALCOM 0548, BALCOM 0776. She testified in her deposition that she was "calm" during her interactions with Officers Figueroa and Zarate (Deposition of Darian Balcom, Ex. F, p. 129), but in messages to friends admitted that she was yelling and mouthing off. Ex. G, BALCOM 0548, 0631, 0765, 0639.

Further, regardless of Ms. Snyder's dereliction of duty in reporting to Pittsburgh Municipal Court to testify in Plaintiff's preliminary hearing, she was present the night of Plaintiff's arrest and wanted the officers to pursue charges. This was not a minor offense, this was a serious felony with a victim. An arrest for a home invasion is simply not comparable to the jaywalking analysis conducted by the Court in *Nieves*.

Mr. Grebner is also not reasonably described as "similarly situated" to Plaintiff under the circumstances as the officers understood them. Grebner provided no statements that he didn't need permission to enter Ms. Snyder's apartment, and when asked, he responded that "he had no reason to believe we were not authorized." Officer Figueroa suspected that Grebner was the other individual who entered the apartment and removed the cats, but he did not have the same degree

---

[6] 18 Pa.C.S. § 3502(c)

of certainty about Grebner's knowledge and criminal intent that he had about Plaintiff's, and could not have established probable cause based on the information he gathered. Further, Officers Figueroa and Zarate thought that Grebner was Plaintiff's employee and concluded that he had been following his employer's direction. The fact that the officers were incorrect about Grebner's relationship to Plaintiff is not material to their probable cause assessment at the time of Plaintiff's arrest.

Officers Figueroa and Zarate respectfully submit that summary judgment should be granted in their favor regarding Plaintiff's First Amendment retaliation claim.

> D. <u>Plaintiff was not treated differently based on her gender, and Matthew Grebner is an improper comparator because they two were not similarly situated considering the elements of the criminal offenses for which Plaintiff was charged.</u>

The Fourteenth Amendment's equal protection clause "is essentially a direction that all persons similarly situated should be treated alike. In order to bring a successful section 1983 claim for the denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Shuman v. Penn Manor Sch. Dist*. 422 F.3d 141, 151. (3d Cir. 2005). For a selective prosecution claim, "discriminatory purpose . . . implies that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Wayte v. United States*, 470 U.S. 598, 610 (1985).

Plaintiff claims that Officers Figueroa and Zarate violated her right to equal protection of the law because she, a woman, was arrested, but Grebner, a man, was not. The evidence for this claim seems to be that Officer Figueroa called her "sweetheart" and told Grebner that Plaintiff "sassed" him – a claim that Officer Figueroa denies, that Plaintiff herself did not hear, and that is not corroborated anywhere else in the record – but did not call Grebner "sweetheart" or any other similar term.

This Court's Report and Recommendation on the motion to dismiss submitted by Officers Figueroa and Zarate noted that per the Amended Complaint, "Plaintiff and Mr. Grebner engaged in the same conduct." ECF No. 30, p. 10.  Now, with the benefit of discovery, it is clear that not only were they not engaged in the same conduct, but there is no evidentiary support for Plaintiff's contention that she was only arrested because she is a woman.

The Defendants incorporate the discussions *supra* regarding the elements of burglary, criminal trespass, and theft by unlawful taking, as well as the information available to the officers in determining whether probable cause existed to justify an arrest.  Given the totality of the circumstances, it is not rational to conclude that but for Plaintiff's gender she would not have been arrested.

The officers had an objective, reasonable basis for believing that Plaintiff had committed felony offenses.  Plaintiff's own statements and behavior, as well as the statements made by Ms. Snyder, resident of the apartment in question, demonstrate that this was not an arrest motivated by discriminatory purpose.  Grebner did not make incriminating statements and the officers were under the impression that he was following Plaintiff's orders in going to Ms. Snyder's apartment and removing the cats, therefore there was no indication that his conduct satisfied the *mens rea* requirement of burglary, criminal trespass, or theft by unlawful taking.  While their actions may have been similar, Officers Figueroa and Zarate cannot make a lawful arrest unless they have probable cause that every element of a criminal offense has been met.

Plaintiff's equal protection claim is puzzling.  It seems that she is alleging that she had a right not to be arrested unless Grebner, too, was arrested.  She also seems to assume that because Grebner was not arrested at the same time that she was, he could never be arrested, when in fact,

officers often bring charges against co-defendants at different times, depending on information gathered by police or prosecutors as part of their investigation.

It is not disputed that Plaintiff took offense to being called "sweetheart," and while Officer Figueroa did not intend offense or was not mindful that the term can be disparaging and sexist, Plaintiff interpreted it as such and that is regrettable. However, section 1983 does not provide a private citizen a remedy for offensive or sexist language that stands on its own, unconnected with the greater set of facts. Discovery has failed to demonstrate that Officers Figueroa and Zarate arrested Plaintiff and not Grebner because of hostility or discriminatory animus toward women.

Officers Figueroa and Zarate respectfully submit that summary judgment should be granted in their favor regarding Plaintiff's Fourteenth Amendment equal protection claim.

E.    Officers Figueroa and Zarate are entitled to qualified immunity as a matter of law.

Public officials are immune from suit under 42 U.S.C. § 1983 unless they have "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 767 (2014).

The Western District of Pennsylvania's Judge Hornak provided a thorough analysis of qualified immunity in his opinion in *Knight v. Bobanic*, affirmed by the Third Circuit:

> Qualified immunity shields "government officials performing discretionary functions" from liability for § 1983 damages claims insofar as the officials' "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is intended to shield officers who "make reasonable but mistaken judgments about open legal questions" and provides protection for "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The "entitlement" of qualified immunity functions as an "immunity from suit rather than a mere defense from liability." *Mitchell v. Forsyth*, 477 U.S. 511, 526 (1985) (emphasis omitted).
>
> As our Court of Appeals has recently cautioned the trial courts in this Circuit, "[q]ualified immunity, after all, protects even those officials who exercise extraordinarily poor judgment." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018) (citing *al-Kidd*, 563 U.S. at 743). By the same token, qualified immunity does not apply

when the facts shown by the plaintiff make out a violation of a constitutional right and the court determines that the right at issue was clearly established as of the date that the alleged violation occurred. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

*Knight v. Bobanic,* No. 2:15-CV-00820, 2019 WL 2151293, at *5 (W.D. Pa. May 17, 2019), aff'd, 807 F. App'x 161 (3d Cir. 2020)

Judge Hornak also explained the review process to determine whether a right had been clearly established such that an officer should have known his actions were inappropriate:

> A right is "clearly established" only if "every reasonable official would have understood that what he is doing violates th[e] right." *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. In making this determination, courts look first to relevant precedent from the Supreme Court and controlling authority from the regional court of appeals. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 248 (3d Cir. 2016). Absent controlling authority on point, a right may be "clearly established" if there is a "robust consensus of cases of persuasive authority" that describes and defines the right at issue. *Id.; see also al-Kidd*, 563 U.S. at 741–42. District court decisions, though not binding, may also inform this analysis. *Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017) (citing *Doe v. Delie*, 257 F.3d 309, 321 n.10 (3d Cir. 2001)).

*Knight*, at *6.

The question for this review is whether Officers Figueroa and Zarate would have known that calling someone "sweetheart" or making statements such as "You probably don't like Trump, do you? I'm glad he won." after probable cause had been established to effectuate an arrest would be unconstitutional.[7]

As recounted *supra*, the facts as Officers Figueroa and Zarate knew them were that 911 dispatched them to respond to a report of a burglary in progress; the 911 caller met them when

---

[7] It is crucial to note that the Defendant Officers deny that they mentioned Donald Trump at any point during the events with Plaintiff on December 18, 2017. That allegation is only included here for the benefit of argument regarding Plaintiff's uncorroborated allegations.

they arrived and directed them to the apartment where Plaintiff, Grebner, and the two cats were located; Plaintiff told the officers that she had taken the cats and that she didn't need permission to have entered Ms. Snyder's apartment; Mr. Grebner made no such incriminating statements but did convey that he believed that they were authorized to have entered the apartment; Ms. Snyder arrived shortly thereafter and confirmed that she had not given Plaintiff permission to enter her apartment in her absence.

It is Plaintiff's responsibility to establish that applicable legal standards were in place at the time regarding her claims. The burden properly rests with a plaintiff to cite controlling precedent that places the alleged right beyond debate. *See Plumhoff v. Rickard*, 572 U.S. 765 (2014), *Wilson v. Layne*, 526 U.S. 603 (1999). Officers Figueroa and Zarate have not found any cases where officers acted similarly when faced with a similar set of circumstances, and were determined to have violated the First, Fourth, or Fourteenth Amendments. An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it. In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Plumhoff*, 572 U.S. at 778-79.

Officers Figueroa and Zarate respectfully assert their rights to judgment based on qualified immunity.

## IV. CONCLUSION

For the above reasons, Defendant Officers Gabe Figueroa and Jorge Zarate respectfully request that this Honorable Court grant their Motion for Summary Judgment.

Respectfully Submitted,

/s/ Emily C. McNally
Emily C. McNally
Assistant City Solicitor
City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219
412-255-2613
emily.mcnally@pittsburghpa.gov
*Counsel for Defendants*