IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**DARIAN BALCOM,**              )
                                )
                Plaintiff,      )
                                )
        v.                      )        2:19cv506
                                )        **Electronic Filing**
**CITY OF PITTSBURGH** individually, )
**GABE FIGUERO** individually, **JOHN** )
**DOE** individually, **JORGE ZARATE,** )
**OFFICER LEO, OFFICER** )
**DONNOLLEY** and **OFFICER SMITH,** )
                                )
                Defendants.     )

## MEMORANDUM ORDER

AND NOW, this 30th day of March, 2022, upon due consideration of defendants' motion for summary judgment and [71] the Report and Recommendation of the Magistrate Judge addressing the same, and [74] defendants' Objections to the Report and Recommendation, and after *de novo* review of the record, IT IS ORDERED that [53] defendants' motion be, and the same hereby is, granted in part and denied in part. The motion is granted as to plaintiff's Fourth Amendment claim for false arrest/malicious prosecution. The motion is denied as to plaintiff's First Amendment Retaliation and Fourteenth Amendment Equal Protection claims. The motion is held in abeyance with respect to whether plaintiff's First Amendment right against retaliation was clearly established at the time of her arrest in 2017 and the case is referred back to the Magistrate Judge for further proceedings. The Magistrate Judge's Report and Recommendation of February 28, 2022, as augmented below is adopted as the opinion of the court.

Defendants' objections are unavailing. First, it is well settled that at summary judgment, the court is required to read the record in the light most favorable to the non-moving party and draw all reasonable inferences from the evidence of record in the non-moving party's favor. Here, notwithstanding that several officers gave testimony that is different from or drawn into

dispute by plaintiff's version of the events, defendants have not identified any basis for this court to ignore the controlling standards of review and interpret the record in their favor on the matters in dispute, which center around the interaction between plaintiff and officers Figuero and Zatate. And given the prominence of plaintiff's interaction with them in supplying the basis they advance for having probable cause to arrest her, their repeated assertions that plaintiff's statements and/or accounts of the interactions between them are "immaterial" or countered by the officers' testimony is unavailing.

Second, the issue of probable cause in the instant setting sufficiently is disputed and the parties' differing accounts must be submitted to a jury for resolution.  Compare Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010) ("Taking all inferences in favor of [the plaintiff], a reasonable jury could conclude that, at the time the arrest was made, the facts and circumstances within [the arresting officer's] knowledge were not sufficient "to warrant a prudent man in believing that [the suspect] had committed . . . an offense.  Accordingly, on this record, viewed in [the plaintiff's favor], it was error for the District Court to hold that [the arresting officer] had probable cause to arrest [the plaintiff].").  In other words, the jury will be entitled credit plaintiff's version of the events and after considering all of the circumstantial evidence and the reasonable inferences to be drawn therefrom, conclude that plaintiff was sufficiently situated with Grebner, and, like Grebner, the arresting officers lacked probable cause to arrest plaintiff.

In this regard, plaintiff's statement to Officer Figuero that she did not need Larken Snyder's permission to enter the apartment to remove the cats is not the panacea defendants make it out to be.  The logical inference to be drawn from the statement which plaintiff recounts making is that plaintiff had permission or justification to enter the premises from another source, such as the property owner or a separate tenant having the ability to authorize such access. Defendants' insistence that plaintiff's statement demonstrated that she lacked authority from any

2

source is an inference drawn in their favor and one the jury does not have to draw. And the jury need only contrast the other facts and circumstances between plaintiff and Grebner that were known to the officers to conclude that probable cause to treat plaintiff differently by arresting her on the basis of that statement was lacking.

Finally, issues of fact preclude the application of qualified immunity at this juncture. The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Under this doctrine government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting [a deprivation of a constitutional violation resulting in harm or injury], . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the deprivation. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Qualified immunity is "an entitlement not to stand trial or face the burdens of litigation." Saucier, 533 U.S. at 200 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). A government official performing discretionary functions is immune from claims for damages unless the evidence of record as read in the light most favorable to the non-moving party will support findings that (1) the official violated the plaintiff's constitutional rights, and (2) the constitutional right that was violated was clearly established. Id. at 201. The courts retain discretion in deciding which of the two prongs of this analysis should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Qualified immunity is an affirmative defense and the burden of proving the prerequisites for its application rests with the party seeking to invoke it. Thomas v. Independence Twp., 463

3

F.3d 285, 292 (3d Cir. 2006);  Hicks v. Feeney, 850 F.2d 152, 159 (3d Cir. 1988).  "The issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity."  Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009).  In deciding qualified immunity questions at summary judgment, a court must view the facts in the light most favorable to the plaintiff.  Id.

The doctrine "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson, 555 U.S. at 231; accord Burns v. Pa. Dept. of Corrections, 642 F.3d 163, 176 (3d Cir. 2011).  And where its protections are appropriate, the immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson, 555 U.S. 231 (internal quotation omitted).  Thus, when properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, as aptly pointed out in the Report and Recommendation, the Equal Protection Clause secures the right to be free from selective enforcement of the criminal laws premised on an arbitrary application such as race, religion or gender.  Report and Recommendation (Doc. No. 71) at 14 (citing Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005)); accord Dique v. New Jersey State Police, 603 F.3d 181, 184 n.5 (3d Cir. 2010).  And in assessing whether a plaintiff has advanced sufficient evidence to establish a violation of this right as part of a qualified immunity analysis, it is improper to disregard the evidence bearing on an actor's state of mind.  See, e.g. Grant v. City of Pittsburgh, 98 F.3d 116, 124 (3d Cir. 1996) (finding that "in evaluating a defense of qualified immunity, an inquiry into the defendant's state of mind is

4

proper where such state of mind is an essential element of the underlying civil rights claim");
Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82, 94 (3d Cir. 1998) (finding
that "[i]n the context of a First Amendment retaliation claim, [the qualified immunity]
determination turns on an inquiry into whether officials reasonably could believe that their
motivations were proper even when their motivations were in fact retaliatory."). As set forth in
the Report and Recommendation, when the evidence from which the jury could find
discriminatory intent is taken into account, the record contains sufficient evidence from which "a
reasonable jury could conclude that Plaintiff was treated differently than Mr. Grebner based on
her sex/gender." Thus, under the first prong, a jury may determine the facts in a manner that will
establish a violation of plaintiff's rights as protected by the Equal Protection Clause.

Having determined that the record will support a finding that plaintiff's rights were
violated by the selective enforcement of the criminal law based on plaintiff's sex/gender, the
second prong of the qualified immunity analysis asks whether "at the time of the officer's
conduct, the law was sufficiently clear that every reasonable official would understand that what
he is doing is unlawful." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018). The
purpose of this inquiry is to account for "the reality that 'reasonable mistakes can be made as to
the legal constraints on particular police conduct.'" Hickman v. Borough, 2017 WL 1197806, at
*11 (D.N.J. Mar. 31, 2017) (quoting Santini, 795 F.3d at 418).

"Clearly established means that, at the time of the officer's conduct, the law was
sufficiently clear that every reasonable official would understand that what he is doing is
unlawful." James v. New Jersey State Police, 957 F.3d 165, 169 (3d Cir. 2020) (quoting Wesby,
138 S. Ct. at 589). This assessment involves "an 'objective (albeit fact-specific) question,' under
which '[an officer]'s subjective beliefs . . . are irrelevant." Id. (quoting Anderson v. Creighton,
483 U.S. 635, 641 (1987)). The inquiry is undertaken from the perspective of a reasonable

officer, and "only the facts that were knowable to the defendant officer" are taken into account. Id. (quoting White v. Pauly, -- U.S. --, 137 S. Ct. 548, 550 (2017) (citation omitted).

A plaintiff might be able to show that a right is clearly established if the violation in question "[is] 'obvious.'"  Id. (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (quoting Hope v. Pelzer, 536 U.S. 730, 738 (2002)).  But the ability to establish that a right was clearly established through this approach generally is quite limited.  Id.

It follows that "in most cases, a plaintiff must show that a right is clearly established because 'the violative nature of [the] particular conduct [was] clearly established.'"  James, 957 F.3d at 169 (quoting Ziglar v. Abbasi, -- U.S. --, 137 S. Ct. 1843, 1866 (2017) (quoting Mullenix, 136 S. Ct. at 308)).  In other words, "'settled law' . . . must 'squarely govern[ ]' the specific facts at issue."  Id. (quoting Wesby, 138 S. Ct. at 590 and Kisela v. Hughes, -- U.S. --, 138 S. Ct. 1148, 1152 (2018)).  This standard can be satisfied by identifying a case where an officer acting under similar circumstances was held to have violated the constitutional provision at issue.  James, 957 F.3d 169-70 (quoting White, 137 S. Ct. at 552).

In this setting "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'"  Id. (quoting Bland v. City of Newark, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted)); accord Wesby, 138 S. Ct. at 589–90 ("To be clearly established, a legal principle must ... [be] dictated by controlling authority or a robust consensus of cases of persuasive authority[.]").  A case directly on point is not required to show a right is clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate."  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  In other words, "there must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put

defendant on notice that his or her conduct is constitutionally prohibited." McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001).

There was sufficient precedent to place defendants on notice that selective enforcement of the criminal law violates the arrestee's right to equal protection of the law. The Supreme Court has long recognized that the discriminatory enforcement of a statute or law by a state or local official is unconstitutional. Cox v. Louisiana, 379 U.S. 536 (1965); Oyler v. Boles, 368 U.S. 448 (1962); Ah Sin v. Wittman, 198 U.S. 500 (1905); Yick Wo v. Hopkins, 118 U.S. 356 (1886). Indeed, in 1886, the Supreme Court laid down the rule that a law which is "fair on its face and impartial in its appearance" may nonetheless be utilized in a manner that constitutes "illegal discrimination between persons" "if it is applied and administered by public authority with an evil eye and an unequal hand." Yick Wo, 118 U.S. at 373–374. In this regard, it has been recognized for some time that "public officials engage in unconstitutional discriminatory application or administration of a facially impartial law when they seek to enforce the law 'on the basis of an unjustifiable standard, such as race, or religion, or some other arbitrary factor,' or when they seek to enforce the law in order 'to prevent the exercise of a fundamental right.'" Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993) (quoting United States v. Schoolcraft, 879 F.2d 64, 68 (3d Cir.), cert. denied, 493 U.S. 995 (1989).

More to the point, our Court of Appeals long ago recognized that "[i]n considering a claim of selective prosecution in United States v. Berrigan, 482 F.2d 171, 174 (3d Cir. 1973), this court stated that although the government is permitted 'the conscious exercise of some selectivity' in the enforcement of its criminal laws, Oyler v. Boles, 368 U.S. 448 . . . (1962), *any* 'systematic discrimination' in enforcement, (United States v. Robinson, 311 F. Supp. 1063, 1065 (W.D. Mo. 1969)), *or 'unjust and illegal discrimination between persons in similar circumstances,*' Yick Wo, *supra*, 118 U.S. at 374 . . ., violates the equal protection clause and

7

renders the prosecution invalid.'"   United States v. Torquato, 602 F.2d 564, 568 (3d Cir. 1979)

(emphasis added).  It likewise observed that "[u]nequal application of the criminal laws does not

amount to a constitutional violation, however, 'unless there is shown to be present in it an

element of intentional or purposeful discrimination.'"   Id. at 569 (citing Snowden v. Hughes, 321

U.S. 1, 8 (1944) and Washington v. Davis, 426 U.S. 229 (1976)).

       In 1971, the Supreme Court extended the Fourteenth Amendment's protections to "a

woman who complained that her State had denied her the equal protection of its laws."  United

States v. Virginia, 518 U.S. 515, 532 (1996) (citing Reed v. Reed, 404 U.S. 71, 73 (1971).

"Since Reed, the Court has repeatedly recognized that neither federal nor state government acts

compatibly with the equal protection principle when a law or official policy denies to women,

simply because they are women, full citizenship stature - equal opportunity to aspire, achieve,

participate in and contribute to society based on their individual talents and capacities."  Id.  And

while the authority of the state may be used to treat men different than women where the

justification for doing so is "exceedingly persuasive" and the treatment is substantially and

directly related to such a justification, it may not be invoked to denigrate members of either sex

or to perpetuate forms of legal, social or economic inferiority against women.  Id.  And as the

Report and Recommendation astutely noted, in Davis v. Passman, 442 U.S. 228 (1979), the

Supreme Court extended this constitutional protection to any forms of gender discrimination that

do not serve important governmental objectives and substantially relate to the achievement of

those objectives.  Id. at 234-35 ("To withstand scrutiny under the equal protection component of

the Fifth Amendment's Due Process Clause, 'classifications by gender must serve important

governmental objectives and must be substantially related to achievement of those objectives.

The equal protection component of the Due Process Clause thus confers on petitioner a federal

constitutional right to be free from gender discrimination which cannot meet these

requirements.") (quoting <u>Craig v. Boren</u>, 429 U.S. 190, 197 (1976) and <u>Califano v. Webster</u>, 430 U.S. 313, 316–317 (1977)).

While admittedly the body of case law referenced above does not contain a specific scenario that is analogous with the facts plaintiff seeks to establish at trial, it does squarely address the principles of law in question and place beyond debate the proposition that any selective enforcement of the criminal laws on the basis of gender without sufficient justification is prohibited by the equal protection clause.  And it places beyond debate that these principles were clearly established at the time of plaintiff's arrest.

Plaintiff does not seek to establish that defendants simply made a mistake in judgment as to the calculous of probable cause as it related to her; to the contrary, through her equal protection claim she seeks to prove that the officers specifically arrested and treated her differently than her male counterpart, who played an identical role in the events in question, based on what was perceived as insubordinate and non-subservient behavior by a woman.  She has sufficient evidence to permit the finder of fact to make such a determination.  And if she proves to the jury her version of the events and that this improper intent and motive played a causal effect in the decision to arrest her but not Grebner, the defendants' actions easily can be understood to have constituted a knowing and intentional violation of plaintiff's clearly established rights to equal protection of the law, which knowing and intentional violation is beyond the protections afforded by qualified immunity.

Of course, "qualified immunity is an objective question to be decided by the court as a matter of law." <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 242 (3d Cir.2004) (citations omitted).  But where, as here, there are material issues of historical fact in dispute that have a bearing on the application of the defense, "[t]he jury determines [the] disputed historical facts material to the qualified immunity question." <u>Id.</u> (citing <u>Sharrar v. Felsing</u>, 128 F.3d 810, 828

9

(3d Cit 1997)).    Consequently, defendants' position as to the application of qualified immunity, which is based upon their particular but currently unproven account of the historical facts, cannot be adopted as a matter of law at this juncture.



<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge


cc:    Margaret Schuetz Coleman, Esquire
       Emily McNally, Esquire
       Julie E. Koren, Esquire
       Yvonne Schlosberg Hilton, Esquire

       (*Via CM/ECF Electronic Mail*)

10