IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| DARIAN BALCOM, ) | |
| ) | |
| Plaintiff, ) | 2:19-CV-00506-DSC |
| ) | |
| vs. ) | |
| ) | |
| CITY OF PITTSBURGH, GABE ) | |
| FIGUEROA, INDIVIDUALLY; AND ) | |
| JORGE ZARATE, ) | |
| ) | |
| Defendants, ) | |

## REPORT AND RECOMMENDATION

Cynthia Reed Eddy, United States Magistrate Judge.

### I. RECOMMENDATION

This civil action was initiated by Plaintiff Darian Balcom alleging that Defendants two City of Pittsburgh Police Officers Gabe Figueroa and Jorge Zarate ("Defendants" or "Defendant Officers") violated Plaintiff's civil rights in connection with criminal charges brought against her in Allegheny County, Pennsylvania which were dismissed at the preliminary stages. The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331.

Presently before the Court is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 by Defendants on qualified immunity grounds. (ECF No. 53). For the reasons that follow, it is respectfully recommended that the motion for summary judgment be denied.

### II. REPORT

a. Background

Plaintiff owns and manages rental properties in the City of Pittsburgh, including a two-unit residence located at 3542 Fleming Avenue in the Brighton Heights neighborhood of the City of Pittsburgh, Pennsylvania. Pl's Statement of Facts ("SMF") (ECF No. 63) at ¶ 1. Plaintiff's friend,

1

Matthew Grebner helped Plaintiff with maintenance and other property management responsibilities but was not employed by Plaintiff. *Id*. at ¶ 4.  Plaintiff and Mr. Grebner helped the owners of a neighboring property, 3538 Fleming Avenue, with property management responsibilities. *Id*. at ¶ 8.

In December 2017, Plaintiff became aware that Laken Snyder was squatting in the second-floor unit of 3538 Fleming Avenue. *Id*. at ¶ 9.  Ms. Laken was the ex-girlfriend of a former tenant in the unit. *Id*.  Early in the morning of December 18, 2017, Jimmy Gitzen, one of the owners of 3538 Fleming Avenue, told Plaintiff that he believed Snyder had abandoned the unit leaving dogs behind.  Mr. Gitzen lived on the first floor of 3538 Fleming Avenue and told Plaintiff that he had been hearing the dogs scratching at the floor for long periods of time. *Id*. at ¶ 10.  At Mr. Gitzen's request, Plaintiff called Animal Control and reported the situation as possibly abandoned dogs and Animal Control responded immediately by visiting the property and left a door hanger instructing the dogs' owner to contact them. *Id*. at ¶ 11.  That same day, Plaintiff accompanied Mr. Gitzen into the building's second floor unit to inspect the unit and to give food and water to the dogs. *Id*. at ¶ 12.  Plaintiff observed that the apartment was filthy and did not look livable or inhabited, animal feces and garbage was strewn everywhere, there was overturned furniture, graffiti on the walls, a clogged toilet, bathtub full of dirty water, no sheets on the bed and there was no food or water for the dogs. *Id*.  Plaintiff took photographs of the apartment's condition. *Id*.  Plaintiff and Mr. Gitzen found two dogs inside and fed one of the cans of dog food and left water for them and found a cat litterbox that was filled with feces that a cat would not be able to use it, but they did not see any cats in the apartment. *Id*. at ¶ 13.

Mr. Gitzen and Plaintiff agreed that Plaintiff would return to the apartment in the evening when Mr. Gitzen was at work and would feed the dogs again and Mr. Gitzen left a can of dog food

on the steps by the apartment. *Id*. at ¶ 14.  Mr. Grebner became aware of the situation and offered to accompany Plaintiff to feed the dogs. *Id*. at ¶ 15.  When Plaintiff and Mr. Grebner arrived at the apartment, two cats appeared, and they appeared to be very hungry. *Id*. at ¶ 16.  Because of the conditions of the apartment and Mr. Grebner's belief that Animal Control would euthanize the cats, Plaintiff and Mr. Grebner took the cats to an empty unit in Plaintiff's apartment building next door where they could provide them with food, water, and a clean litterbox. *Id*. at ¶ 17.

Talman Charters, one of Balcom's tenants in her property across the street from Mr. Gitzen's property, saw people in the abandoned apartment and called 911. *Id*. at ¶ 19.  He reported two individuals with flashlights in the upstairs residential unit of 3538 Fleming Avenue. Defs' Statement of Fact ("SMF") (ECF No. 55) at ¶ 1.  Mr. Charters reported that he knew the resident of the apartment and that the resident was not home at that time. *Id*. at ¶ 2.  Defendant Officers Figueroa and Zarate were dispatched to the address to respond to the 911 call and were told that there was a burglary in process. *Id*. at ¶¶ 3-4.  When the Defendant Officers arrived on the scene, they were met by Mr. Charters who told the Defendant Officers that his landlord, Plaintiff Balcom and Mr. Grebner had walked out of 3538 Fleming Avenue carrying two crates that he believed contained cats and that he believed Plaintiff and Mr. Grebner were in the upstairs unit of 3542 Fleming Avenue. *Id*. at ¶¶ 8-9.  Mr. Charters informed Officers that Ms. Laken informed him that no one should be in the apartment. Pl's SMF at ¶ 25.  Mr. Charters let Defendant Officers in the common hallway of 3542 Fleming Avenue and Defendant Officers went upstairs to the upper unit where Plaintiff and Mr. Grebner met them at the door. Def's SMF at ¶¶ 12-13.  Plaintiff maintains that the Officers entered without consent and without a warrant. Pl's SMF at ¶ 21.

Defendant Officers asked Plaintiff if she had taken anything from the building next door and she responded that she had taken two cats. Def's SMF at ¶ 14.  According to Defendants,

3

Defendant Officer Figueroa asked Plaintiff Balcom whether she was allowed inside the next-door apartment and she responded "I didn't need [Ms. Snyder's] permission." *Id.* at ¶ 15; Pl's SMF at ¶ 23. Plaintiff maintains that she did not tell the Officers that she did not need permission to enter the unit. Pl's SMF at ¶ 23.

Defendant Officers then took Plaintiff and Mr. Grebner outside and separated them. *Id.* at ¶ 17. Outside of Plaintiff's presence, an unnamed police officer asked Mr. Grebner whether he thought he and Plaintiff were authorized to be in the upstairs unit of 3538 Fleming Avenue. *Id.* at ¶ 18. He responded that he "didn't really know what was going on," and when asked to clarify, Mr. Grebner added "I had no reason to believe we were not authorized." *Id.* Officer Figueroa does not recall having spoken to Mr. Grebner. *Id.* at ¶ 19. Two other City of Pittsburgh Police Officers who arrived on the scene, Officers Smith and Donnelly reported interacting with Mr. Grebner outside. *Id.* at ¶ 20. Officer Donnelly described Mr. Grebner as "shocked" that there had been a report of a burglary because he believed that he and Plaintiff had permission to enter the upstairs apartment at 3538 Fleming Avenue. *Id.* at ¶ 21.

When Plaintiff was taken outside and questioned, Defendant Officers maintain that she became upset and "irate" and Officer Figueroa called Plaintiff "sweetheart" to calm her down. *Id.* at ¶¶ 22-23. According to Plaintiff, the Officers were not properly investigating the situation and she said to Officer Figueroa to "get off your power trip." Pl's SMF at ¶ 27. Thereafter, Officer Figueroa made a statement to Plaintiff in which he called her "sweetheart." Plaintiff told Officer Figueroa, "Don't call me sweetheart" and Officer Figueroa said to Plaintiff, "You probably don't like Trump." Plaintiff responded: "No, I don't." Officer Figueroa responded by saying either "I'm glad he won," or "I'm glad he was elected." Pl's SMF at ¶¶ 28-30. Plaintiff then asked the Officers if their behavior and handling of the situation was consistent with their training and the Officers

4

laughed at her. *Id*. at ¶ 31.

Plaintiff testified that she was calm and cooperative with the police that evening. *Id*. at 28. According to the Officers at the scene, in response to being called "sweetheart," Plaintiff became angry and began yelling at Officer Figueroa and comparing the Officers to Donald Trump, called them "wife-beaters" and used profanities. Def's SMF at ¶¶ 25-27. Officer Figueroa testified that he responded to her comment by saying to Plaintiff, "okay, it's time to go to jail now." Pl's SMF at ¶ 32.

While the Officers were outside with Plaintiff and Mr. Grebner, Laken Snyder, the resident of the upstairs unit of 3538 Fleming Avenue arrived and Officers asked Ms. Snyder if she had given Plaintiff permission to enter her home or take her cats out of the apartment and Ms. Snyder confirmed the two cats were hers and told the Officers she had not given anyone permission to enter her apartment. Def's SMF at ¶¶ 30-31.

Thereafter, Officers Figueroa and Zarate charged Plaintiff with felony burglary, felony criminal trespass and misdemeanor theft by unlawful taking. *Id*. at ¶ 32. The Defendant Officers did not arrest Mr. Grebner because they allege he did not make incriminating statements and the Officers believed he was under the impression from Plaintiff that they had permission to enter Ms. Snyder's apartment. *Id*. at ¶ 34. According to Plaintiff, Officer Figueroa told Mr. Grebner that Plaintiff did not do anything wrong, but that she had "sassed" the officers and "you can't do that to a police officer." Pl's SMF at ¶ 37. Plaintiff also maintains that Officer Figueroa also referred to Plaintiff as a "bleeding-heart liberal" during his interaction with Mr. Grebner. *Id*.

Plaintiff was placed into Defendant Officers' patrol car and taken to the Allegheny County Jail and was released on her own recognizance the next morning. *Id*. at ¶¶ 35-36. The charges against Plaintiff were thereafter withdrawn. *Id*. at ¶ 37.

Defendants filed a motion for summary judgment seeking summary judgment on Plaintiff's remaining claims: (1) a First Amendment retaliation claim under 42 U.S.C. § 1983; (2) a Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983; and (3) a Fourth Amendment false arrest and/or malicious prosecution claim under 42 U.S.C. § 1983. The Court granted the motion with respect to Plaintiff's Fourth Amendment claims for false arrest/malicious prosecution as unopposed, denied the motion with respect to Plaintiff's First Amendment retaliation and Fourteenth Amendment equal protection claims and held in abeyance the motion with respect to whether Plaintiff's First Amendment right against retaliation was clearly established as the time of her arrest in 2017. Memo. Order (ECF No. 75). Supplemental briefing was ordered on the sole issue of whether the Defendant Officers are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim and that issue is now ripe for consideration. (ECF Nos. 79, 80, 83, 84).

  b. <u>Standard of Review</u>

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom

should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. Cty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor on that issue. *Id.* "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citing *Huston*, 568 F.3d at 104).

A plaintiff may not, however, rely only on his complaint to defeat a summary judgment motion. *See, e.g.*, *Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made with no evidentiary support may be disregarded. *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

    c.  Discussion

The sole issue to address is whether Plaintiff's right to be free from retaliation under the First Amendment was clearly established at the time of her arrest in 2017.

Qualified immunity shields government employees sued in their personal capacities from

liability unless their conduct violates "clearly established statutory or constitutional rights . . . which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). In determining whether a government official is entitled to qualified immunity, courts apply a two-part test: (1) whether the facts alleged by the plaintiff establish a violation of a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged violation such that a reasonable official would understand what he is doing violates that right. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). The court can begin with either prong. *James v. New Jersey State Police*, 957 F.3d 165 (3d Cir. 2020).

The Court already found that the first requirement, *i.e.*, whether the facts establish the violation of a constitutional right, has been met. Rep. and Rec. (ECF No. 71 at 8-14) (adopted by Memo. Order (ECF No. 75 at 1)). The second prong "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, ––––, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (internal quotation marks and citations omitted). This "inquiry is an 'objective (albeit fact-specific) question,' under which '[an officer]'s subjective beliefs . . . are irrelevant.' " *James*, 957 F.3d 165 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "[T]he plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

In determining whether a right is clearly established, the "inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.' " *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614,

119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) (internal quotation marks omitted)). "Stated another way, a court need not find that the very action in question has previously been held unlawful, . . . but rather may conclude that the firmly settled state of law, established by a forceful body of persuasive precedent, would place a reasonable official on notice that his actions obviously violated a clearly established constitutional right." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 639 (3d Cir. 2015) (internal citations and quotation marks omitted).

To state a claim for First Amendment retaliation, plaintiffs must show that they (1) engaged in protected speech or activity; (2) the government responded to that speech or activity with retaliation; and (3) that the protected speech or activity was the cause of the government's retaliation. *Nieves v. Bartlett*, 204 L. Ed. 2d 1, 139 S. Ct. 1715, 1722 (2019).

As for the causation element to state a claim for First Amendment retaliation in the context of retaliatory arrest, the United States Supreme Court has held that there is no causation for retaliation where there is probable cause to effect the arrest. *Reichle v. Howards*, 566 U.S. 658, 664–65, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012) ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of Howards' arrest."). In other words, a plaintiff is required to "plead and prove the absence of probable cause for the underlying criminal charge" in a retaliatory arrest claim. *Nieves*, 139 S. Ct. at 1724 (citing, *Hartman v. Moore*, 547 U.S. 250, 263, 265–66, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006). Therefore, if an officer has probable cause to arrest the plaintiff, the plaintiff cannot state a claim for First Amendment retaliation.

Despite this general "no probable cause" rule, in 2019, the Supreme Court outlined an exception and found that a plaintiff can state a claim for First Amendment retaliation "when [she]

9

presents objective evidence that [s]he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727. Because Plaintiff's arrest occurred on December 18, 2017, prior to the Supreme Court's decision in *Nieves*, the Court must determine at the time of Plaintiff's arrest, whether it was clearly established that the existence of probable cause to arrest Plaintiff negates causation for a First Amendment retaliation claim. While it is evident that the clearly established law at the time of Plaintiff's arrest was that there is no First Amendment protection against retaliation for an arrest supported by probable cause, *see Reichle*, 566 U.S. at 664–65, it does not automatically entitle Defendants to qualified immunity.

The presence or absence of probable case is usually a question for the jury to determine, and unless "no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate." *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) (citation omitted) (abrogated on other grounds by *Curley v. Klem*, 499 F.3d 199, 209-11 (3d Cir. 2007)). A district court can determine that "probable cause did exist as a matter of law if the evidence, viewed in the light most favorably to the [p]laintiff, reasonably would not support a contrary factual finding." *Est. of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (internal citation and quotations omitted). To this end, the Supreme Court in the context of First Amendment retaliation cases:

> Probable cause or its absence will be at least an evidentiary issue in practically all such cases. Because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven.

*Hartman*, 547 U.S. at 265–66.

Defendants argue that the Court should not consider any argument that there was no

probable cause to arrest Plaintiff or that the existence of probable cause is a question for the jury because Defendants would be entitled to qualified immunity even if they lacked probable cause for reasonably but mistakenly concluding that probable cause was present. *See* ECF No. 80 (quoting *D.C. v. Wesby*, 199 L. Ed. 2d 453, 138 S. Ct. 577 (2018); *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012)). However, whether it was reasonable for the Officers to believe probable cause was present is a question for the jury. To this end, the Court has previously held that

> the issue of probable cause in the instant setting sufficiently is disputed and the parties' differing accounts must be submitted to a jury for resolution. . . . In other words, the jury will be entitled to credit plaintiff's version of events and after considering all of the circumstantial evidence and the reasonable inferences to be drawn therefrom, conclude that plaintiff was sufficiently situated with Grebner, and like Grebner, the arresting officers lacked probable cause to arrest plaintiff. In this regard, plaintiff's statement to Officer Figuero that she did not need Larken Snyder's permission to enter the apartment to remove the cats is not the panacea defendants make it out to be. The logical inference to be drawn from the statement which plaintiff recounts making is that plaintiff had permission or justification to enter the premises from another source, such as the property owner or a separate tenant having the ability to authorize such access. Defendants' insistence that plaintiff's statement demonstrated that she lacked authority from any source is an inference drawn in their favor and one the jury does not have to draw. And the jury need only contrast the other facts and circumstances between plaintiff and Grebner that were known to the officers to conclude that probable cause to treat plaintiff differently by arresting her on the basis of that statement was lacking.

ECF No. 75 at 2-3. Accordingly, because this Court has previously held that the issue of whether there was probable cause to arrest Plaintiff is for the jury to determine based on the credibility of the witnesses, Defendants are not entitled to qualified immunity on Plaintiff's First Amendment retaliation claim at the summary judgment stage. If an arrest lacks probable cause and is made in retaliation for nonprovocative objection to police conduct, there is a violation of clearly established law. *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984) (applying to First and Fourteenth Amendment rights). Therefore, if the jury determines that no probable cause existed

11

to arrest Plaintiff, Defendants would not be entitled to qualified immunity, as the right to be free from arrests not supported by probable cause was clearly established at the time of Plaintiff's arrest. *See Koltonuk v. Borough of Laureldale*, 443 F. Supp. 2d 685, 701 (E.D. Pa. 2006) (probable cause for filing a criminal complaint was jury question for First Amendment retaliation claim).

Lastly, Defendants argue that Plaintiff admitted that the officers had probable cause to arrest Plaintiff in their brief in opposition to the motion for summary judgment and she should be precluded from arguing that no probable cause existed to arrest her.[1] ECF No. 80 at 9 (citing ECF No. 61 at p. 8).  The Court will not consider Plaintiff's argument made for the limited purpose of responding to a motion for summary judgment as a waiver of the argument that probable cause did not exist for purposes of First Amendment retaliation.

d.  Conclusion

Based on the foregoing, it is respectfully recommended that Defendants' motion for summary judgment for the limited purpose of qualified immunity as to Plaintiff's First Amendment retaliation claim be denied.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until November 14, 2022 to file objections to this report and recommendation.  Unless otherwise ordered by the District Judge, responses to objections are due fourteen days after the service of the objections.  Failure to file timely objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: October 31, 2022.

---

[1] Defendants also argue Plaintiff has not shown the personal involvement of Defendants. This argument will be summarily rejected, as it does not comport with the limited purpose of the supplemental briefing and any such argument should have been raised in Defendants original brief.

                                              Respectfully submitted,
                                              <u>s/ Cynthia Reed Eddy</u>
                                              United States Magistrate Judge

cc:      Honorable David S. Cercone
          Senior United States District Judge
          *via electronic filing*

          *All attorneys of record*
          *via electronic filing*